RAFAEL BUSCAGLIA, TESORERO DE PUERTO RICO, peticionario, *v.* TRIBUNAL DE CONTRIBUCIONES DE PUERTO RICO, demandado; ISABEL PÉREZ VAHAMONDE, interventora.

Núm. 124.—*Sometido:* Julio 1, 1947. *Resuelto:* Marzo 8, 1948.

*Hon. Procurador General Luis Negrón Fernández* y *Elmer Toro Lucchetti, Procurador General Auxiliar,* abogados del peticionario; *Otero Suro & Otero Suro,* abogados de la interventora, querellante en el pleito principal.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

En los casos de *Fiddler* v. *Tribunal de Contribuciones,* 65 D.P.R. 202, y *Buscaglia, Tes.,* v. *Tribunal de Contribuciones* y *Ahumada, Interventor,* 65 D.P.R. 977, resolvimos que las secciones 12(a) y 18 de la Ley de Contribuciones sobre In-

gresos, según éstas leían desde 1936 a 1940, eran nulas en cuanto ellas (1) imponían un tipo mayor de contribución normal a las personas no residentes que no eran ciudadanos de Puerto Rico que el tipo impuesto a los residentes, y (2) les negaban a tales no residentes una exención personal y créditos por dependientes. El presente caso requiere que volvamos a examinar la doctrina establecida en dichos casos.

El caso de *Ahumada* está pendiente ante la Corte de Circuito de Apelaciones. El de *Fiddler* también fué a dicha Corte, pero ésta no pasó sobre la validez de las secciones 12(*a*) y 18. Por el contrario, después de llamar la atención hacia el artículo 183 del Reglamento núm. 1 de Contribuciones sobre Ingresos,(¹) dejó sin efecto nuestra sentencia y devolvió el caso para que se determinara como cuestión de hecho, si el contribuyente era un residente de Puerto Rico dentro del significado de la Ley de Contribuciones sobre Ingresos, aun cuando éste tenía su domicilio en Connecticut. *Buscaglia* v. *Fiddler*, 157 F.2d 579 (C.C.A. 1, 1946).

La primera cuestión a dilucidar es si el Tribunal de Contribuciones estuvo en lo cierto al resolver que en 1943 la

---

(¹) El artículo 183 prescribe como sigue:

"Artículo 183.—Definición.—Un 'individuo no residente que no sea ciudadano de Puerto Rico' significa un individuo (*a*) cuya residencia no esté dentro de Puerto Rico y (*b*) que no sea ciudadano de Puerto Rico. Un individuo que esté de hecho en Puerto Rico que no sea un mero transeúnte o visitante es un residente de Puerto Rico a los fines de la contribución sobre ingresos. El que sea o no un transeúnte se determinará por sus intenciones en relación con el término y naturaleza de su estada. Una mera intención pasajera, indefinida en cuanto al período, de regresar a otro país no es suficiente para convertirlo en transeúnte. Si vive en Puerto Rico y no tiene intención definitiva en cuanto a su estada, es un residente. Una persona que viene a Puerto Rico para un propósito definido que por su naturaleza puede realizarse en poco tiempo es un transeúnte; pero si su propósito es de tal naturaleza que para realizarlo deba prolongar su estada, y a tal fin el individuo establece temporalmente su hogar en Puerto Rico, se convierte entonces en residente, aun cuando puede ser que su intención sea en todo momento volver a su domicilio fuera de aquí cuando se realice o abandone el propósito que lo trajo a esta isla. Una corporación extranjera es aquélla que no es doméstica. Véase el artículo 6."

El artículo 183 está tomado de su equivalente federal para extranjeros no residentes. 8 Mertens, *Law of Federal Income Taxation*, sec. 45.08, pág. 249.

contribuyente no era un residente de Puerto Rico y no era ciudadana de Puerto Rico.

■ Un contribuyente no está clasificado como no residente de Puerto Rico bajo la Ley de Contribuciones sobre Ingresos simplemente porque esté domiciliado fuera de Puerto Rico. Puede, a los fines de contribuciones sobre ingresos, "residir" en Puerto Rico aun cuando esté domiciliado en otro sitio. *Buscaglia* v. *Fiddler,* supra; artículo 183, Reglamento núm. 1 de Contribuciones sobre Ingresos. Cf. Anotación, 82 A.L.R. 932; *Wood* v. *Tawes,* 28 A.2d 850 (Md., 1942) cert. denegado 318 U.S. 788; *Mitchell* v. *Delaware State Tax Com'r,* 42 A.2d 19 (Del., 1945); *Phillips* v. *South Carolina Tax Commission,* 12 S.E.2d 13 (S.C., 1940).

■ Por otro lado, la ciudadanía de Puerto Rico está predicada en domicilio en Puerto Rico. Tanto bajo la sección 2(a) (7) de la Ley de Contribuciones sobre Ingresos(²) como bajo las secciones 5 y 5(a) del Acta Orgánica,(³) la "residencia" que hace que una persona sea ciudadana de Puerto Rico equivale a domicilio. En consecuencia, tanto para fines de contribuciones sobre ingresos como en términos generales, un ciudadano de Puerto Rico que cambia su domicilio mudándose permanentemente a un estado o país extranjero, pierde su *status* como ciudadano de Puerto Rico, aun cuando sigue siendo ciudadano americano. *Lókpez* v. *Fernández,* 61 D.P.R. 522, 532–34.

■ Contrario al caso de *Fiddler,* la cuestión de si la contribuyente era un no residente que no era ciudadana de Puerto Rico fué litigada ante el Tribunal de Contribuciones.

(²)Más adelante rechazamos la contención de que, a los fines de la contribución sobre ingresos, la sección 2(a)(7) provee una fórmula diferente para la ciudadanía de Puerto Rico a aquélla que se encuentra en el Acta Orgánica.

(³)Por disposición expresa del artículo 5 del Acta Orgánica (ahora incorporada en la Ley de Nacionalidad de 1940, c. 876, 54 Stat. 1137, sec. 202), todos los ciudadanos de Puerto Rico fueron declarados ciudadanos de los Estados Unidos. Y bajo el artículo 5(a) un ciudadano de los Estados Unidos que "resida" en Puerto Rico durante un año viene a ser ciudadano de Puerto Rico. Ley de marzo 4, 1927, c. 503, 44 Stat. 1418, sec. 2; 48 U.S.C. sec. 733(a).

No hubo controversia sustancial en la evidencia ante dicho Tribunal. Isabel Pérez Vahamonde, la contribuyente, vino a ser ciudadana americana por haber nacido en Puerto Rico. En 1923 se fué a España, donde contrajo matrimonio con Narciso Maldonado, un español. Maldonado vino a Puerto Rico, junto a su esposa e hija, en 1936. Sin embargo, no se le permitió entrar a Puerto Rico y se fué a Santo Domingo. Allí permaneció hasta que, debido a las gestiones de su esposa, se le permitió venir a Puerto Rico. Aquí trabajó para Méndez & Cía., Inc., desde 1936 a 1939. Durante la guerra civil en España, desde julio de 1936 hasta 1939, los bienes que Maldonado tenía en España estaban en completo estado de abandono. Al terminar la guerra española, Maldonado volvió a España solo, en viaje de negocios y a investigar el estado de sus bienes.

El 23 de marzo de 1939, la contribuyente obtuvo un pasaporte para ir a España, donde ella y su hija se unieron a su esposo. El 1 de septiembre de 1939, dió comienzo la Segunda Guerra Mundial, haciéndose bastante difícil los viajes. El matrimonio se quedó en España durante dicha guerra, que terminó en 1945. De conformidad con la declaración de un empleado de Méndez & Cía, la contribuyente estuvo haciendo gestiones para regresar a Puerto Rico desde fines de 1944.

La esposa es dueña de dos casas en Puerto Rico, única fuente de sus ingresos dentro de esta isla. Antes de emprender su viaje a España en 1939, la contribuyente y su esposo obtuvieron un préstamo de $11,000 ó $12,000 garantizado por hipoteca sobre estas casas. Esta deuda ha sido pagada en su totalidad.

La planilla de contribuciones sobre ingresos para 1943 fué preparada a la contribuyente por un empleado de Méndez & Cía., Inc., su agente en Puerto Rico. La planilla, que estaba jurada, declaraba que la contribuyente es ciudadana americana y ciudadana puertorriqueña y que no re-

side en Puerto Rico. Al comenzar la vista ante el Tribunal de Contribuciones se le permitió enmendar la querella, cambiándole la alegación de que residía en España por la de que residía en Puerto Rico.

Para llegar a sus conclusiones, el Tribunal de Contribuciones enfatizó los hechos de que la contribuyente sólo estuvo en Puerto Rico, con su esposo e hija, durante el período de la guerra civil en España, desde 1936 hasta 1939; que regresaron a España en 1939, donde la contribuyente y su esposo, un español, habían vivido por muchos años, tan pronto la guerra civil terminó; y que han estado en España desde esa fecha. El Tribunal de Contribuciones, por tanto, concluyó que la contribuyente y su familia nunca tuvieron la intención de abandonar su residencia en España mientras permanecieron en Puerto Rico desde 1936 a 1939.

A la luz de la prueba, el Tribunal de Contribuciones llegó a la conclusión que la contribuyente residió en Puerto Rico hasta 1923, cuando se fué a España; pero que en vista de que estuvo allí trece años, casándose con un español, para 1936 ya había cambiado su residencia a España. También concluyó que en 1943 era residente de España; que había sido residente de dicho país durante un número de años con anterioridad a 1943; y que aun cuando era ciudadana americana, había dejado de ser ciudadana de Puerto Rico en 1943.

Al revisar decisiones del Tribunal de Contribuciones, este Tribunal sólo considera cuestiones de derecho. *Mayagüez Sugar Co.* v. *Tribunal de Apelación de Contribuciones*, 60 D.P.R. 753, 762–3; *cf. Dobson* v. *Commissioner*, 320 U.S. 489. No encontramos base para resolver que el Tribunal de Contribuciones cometió error como cuestión de derecho al concluir que en 1943 la contribuyente no era residente de Puerto Rico dentro del significado de la Ley de Contribuciones sobre Ingresos. Por el contrario, aun cuando tuviéramos poder para resolver dicha cuestión, nuestra conclu-

sión sería la misma que la del Tribunal de Contribuciones. En verdad, en su alegato ante este Tribunal, la contribuyente no impugna expresamente esta conclusión específica.

La única conclusión del Tribunal de Contribuciones que la contribuyente impugna en su alegato aquí, es que ella no era en 1943 ciudadana de Puerto Rico. Y aun sobre este punto no arguye que ella todavía es ciudadana de Puerto Rico dentro del significado de los artículos 5 y 5(a) del Acta Orgánica. Véase *Lókpez* v. *Fernández,* supra. Más bien alega que el Tribunal de Contribuciones cometió error al no concluir que ella es ciudadana de Puerto Rico, según se define en la sección 2(a) (7) de la Ley de Contribuciones sobre Ingresos.

La sección 2(a) (7) ha provisto desde que se aprobó originalmente, Ley núm. 74, Leyes de P. R., 1925 (pág. 401), que el término "ciudadano de Puerto Rico" significa "personas residentes o no en Puerto Rico" definidas como tales en el artículo 7 del Acta Foraker y en el artículo 5 de la actual Acta Orgánica. Arguye la contribuyente que la sección 2(a) (7) establece una fórmula diferente para determinar el status de una persona como "ciudadano de Puerto Rico" de aquélla que se encuentra en los artículos 5 y 5(a) del Acta Orgánica. Su contención es que a los fines de contribuciones sobre ingresos bajo la sección 2(a) (7) una persona puede ser ciudadana de Puerto Rico aun cuando resida (esté domiciliada) en otro sitio, mientras que bajo los artículos 5 y 5(a) del Acta Orgánica una persona es ciudadana de Puerto Rico solamente si está domiciliada aquí.

Encontramos que esta contención es insostenible. La Asamblea Legislativa empleó el término "residente" en la sección 2(a) (7) en la misma forma que usó esta palabra a través de toda la Ley. Es decir, bajo la sección 2(a) (7) y bajo la Ley de Contribuciones sobre Ingresos en su totalidad, una persona puede "residir" aquí aun cuando esté domiciliada en otro sitio; y del mismo modo, aun cuando tem-

poralmente ella no ''resida'' aquí, puede bajo algunas circunstancias estar domiciliada aquí .y por tanto todavía ser ciudadana de Puerto Rico. 'El artículo 61(b) del Reglamento núm. 1 para Contribuciones sobre Ingresos previó esta última posibilidad al disponer que ''los ciudadanos de Puerto Rico, no importa dónde residan, están sujetos a la contribución.'' La sección 2(a) (7), por tanto, no establece una fórmula diferente para determinar el status de una persona como ''ciudadana de Puerto Rico'' de aquélla que se encuentra en los artículos 5 y 5(a) del Acta Orgánica. Por el contrario, al definir un ''ciudadano de Puerto Rico'', expresamente adopta para la Ley de Contribuciones sobre Ingresos, la fórmula que se encuentra en el artículo 5 de la Carta Orgánica. Y, como hemos visto, bajo los artículos 5 y 5(a), la ciudadanía de Puerto Rico está predicada en domicilio en esta isla. Por ende concluímos, contrario a la contención de la contribuyente, que bajo la Ley de Contribuciones sobre Ingresos, y bajo el Acta Orgánica, la misma fórmula es empleada para determinar si una persona es ciudadana de Puerto Rico: debe estar domiciliada en Puerto Rico.

En su consecuencia, somos de opinión que ambas conclusiones del Tribunal de Contribuciones—(1) la contribuyente no residía en Puerto Rico en 1943 dentro del significado de la Ley de Contribuciones sobre Ingresos y del artículo 183 del Reglamento núm. 1 de Contribuciones sobre Ingresos; (2) la contribuyente estaba domiciliada en España en 1943 y por tanto, si bien en esa época era ciudadana de los Estados Unidos, no era ciudadana de Puerto Rico, según se define tanto en los artículos 5 y 5(a) del Acta Orgánica como en la sección 2(a) (7) de la Ley de Contribuciones sobre Ingresos—están sostenidas ampliamente por la evidencia y por las leyes aplicables.

■ Convenimos con el Tribunal de Contribuciones en que los casos de *Fiddler* y de *Ahumada* se aplican aquí, siempre:

y cuando que concluyamos que dichos casos fueron resuel-tos correctamente. El caso de *Fiddler* envolvía el año con-tributivo que terminó el 31 de diciembre de 1936. La sec-ción 52 de la Ley siempre ha provisto que a un no residente se le impondrá contribución solamente sobre ingresos de-rivados de fuentes dentro de Puerto Rico. Ley núm. 74 de 1925.

En 1936 un no residente venía obligado a pagar una con-tribución normal del 6 por ciento sobre el ingreso neto ob-tenido de fuentes dentro de Puerto Rico. Un residente pa-gaba una contribución normal del 2 por ciento sobre los pri-meros $3,000, 4 por ciento sobre los próximos $3,000 y 6 por ciento sobre el resto de su ingreso neto, no importa su pro-cedencia. Sección 12(a), según fué enmendada por la sec-ción 3 de la Ley núm. 102, Leyes de Puerto Rico, 1936 ((1) pág. 525). Los residentes y los no residentes pagaban la contribución adicional sobre su ingreso neto en exceso de $7,000 a los mismos tipos, pagando los no residentes sola-mente sobre ingresos provenientes de fuentes dentro de Puerto Rico. Sección 13, según fué enmendada por la Ley núm. 102.

En 1936, a los fines de calcular la contribución normal solamente, un residente tenía derecho a (1) exención per-sonal de $1,000 si era soltero y $2,500 si era casado, y (2) un crédito de $400 por cada dependiente. Sección 18(c)(d) de la Ley núm. 74 de 1925. A los no residentes se les ne-gaba esta exención personal y los créditos por dependien-tes al calcular la contribución normal. Sección 18(e), se-gún fué enmendada por la sección 2 de la Ley núm. 18, Le-yes de Puerto Rico, 1927, Segunda Sesión Extraordinaria (pág. 487).

El caso de *Ahumada* envolvía los años contributivos de 1936–40. Hubo un número de enmiendas a la Ley de Con-tribuciones sobre Ingresos para 1939 y 1940, pero no afec-tan el resultado de las cuestiones que ahora estamos consi-derando.

El presente caso trata de una deficiencia para el año contributivo que terminó el 31 de diciembre de 1943. Lo mismo que en 1936 bajo la sección 52, en 1943 a los no residentes se les imponía contribución solamente sobre ingresos provenientes de fuentes dentro de Puerto Rico.[4]

En 1943 un residente pagaba sobre su ingreso neto que no excedía de $2,000 una contribución normal del 5 por ciento. El no residente pagaba una contribución fija del 28 por ciento sobre todo su ingreso neto proveniente de fuentes dentro de Puerto Rico. Sección 12(a), según fué enmendada por la sección 3 de la Ley núm. 20, Leyes de Puerto Rico, 1942, Segunda y Tercera Sesiones Extraordinarias ((2) pág. 97). En 1943 un residente pagaba contribución adicional sobre todo su ingreso neto a tenor con la clasificación a que pertenecía, pero un no residente no pagaba contribución adicional en consideración al hecho de que pagaba una contribución normal del 28 por ciento. Sección 13, según fué enmendada por la sección 2 de la Ley núm. 10, Leyes de Puerto Rico, 1943 (pág. 25), vigente desde julio 1, 1942.

---

[4] En este caso no hay problema con respecto a la sección 19 de la Ley, que provee la fórmula para determinar el ingreso neto de fuentes dentro de Puerto Rico. Desde 1925 hasta el 1939 la sección 19 permaneció sin enmienda alguna. Para el 1943, la sección 19(a)—indicando las partidas de ingreso bruto que los no residentes deben tratar como provenientes de fuentes dentro de Puerto Rico—y la sección 19(b)—proveyendo las deducciones de tal ingreso bruto para determinar el ingreso neto de fuentes locales—no fueron, a nuestros fines, cambiadas sustancialmente. Sección 11 de la Ley núm. 31, Leyes de Puerto Rico, 1941 ((1) pág. 479). Pero la sección 19(f), según fué enmendada por la sección 6 de la Ley núm. 20, Leyes de Puerto Rico, 1942, Segunda y Tercera Sesiones Extraordinarias ((2) pág. 97), disponía que las deducciones concedidas a los no residentes no podían exceder del 10 por ciento de su ingreso bruto. Sin embargo, la validez de la sección 19(f), según fué enmendada, no está envuelta aquí. El Tesorero, como se indica más adelante, no rechazó parte alguna de las deducciones de $2,825.03 hechas al ingreso bruto de $6,831, a pesar del hecho de que estas deducciones excedían del 10 por ciento del ingreso bruto de la contribuyente. El Tribunal de Contribuciones ha resuelto que la limitación del 10 por ciento sobre deducciones generales que se encuentra en la sección 19(f) es nula. *Joglar* v. *Tesorero*, 1 D.T.C. 311, 321. El Tesorero no solicitó la revisión por este Tribunal del caso de *Joglar* y aparentemente se ha allanado a dicha decisión.

En 1943 un residente tenía derecho, al calcular tanto la contribución normal como la adicional, a una exención personal y a créditos por dependientes, que se le negaban a los no residentes, excepto que la exención personal para un residente se redujo ahora a $800 para los solteros y a $2,000 para los casados. Secciones 18(b)(c)(d), 19(f), según fueron enmendadas por las secciones 10 y 11 de la Ley núm. 31, Leyes de Puerto Rico, 1941 ((1) pág. 479).

Pasemos a los hechos de este caso específico. En 1943 el ingreso bruto de la contribuyente de fuentes dentro de Puerto Rico—las dos casas que poseía aquí—ascendió a $6,831. En su planilla hizo deducciones generales por valor de $2,825.03; una exención personal de $2,000; y créditos de $800 por dos dependientes. De suerte que, según la contribuyente, su ingreso neto sujeto a contribución ascendía a $1,205.97. Calculó la contribución como si fuera una residente. Pagó una contribución normal de 5 por ciento sobre $1,205.97, o sea $60.30, y la contribución adicional del 5 por ciento sobre $1,205.97, o sea $60.30. En su consecuencia pagó una contribución de $60.30 más $60.30, es decir, $120.60.

En su notificación de deficiencia el Tesorero no discute las deducciones generales ascendentes a $2,825.03.(⁵) Pero rechazó la exención personal de $2,000 y el crédito de $800 para los dos dependientes. También calculó la contribución sobre $4,005.97 (ingreso bruto de $6,831 menos las deducciones generales de $2,825.03) al tipo fijo del 28 por ciento en vez de 5 por ciento por contribución normal y 5 por ciento por contribución adicional. Por tanto notificó a la contribuyente que debió haber pagado una contribución de $1,121.67, y le notificó una deficiencia de $1,001.07, más intereses. Así vemos que en un ingreso bruto de $6,831, reducido a $4,005.97 después de hacerle las deducciones generales, un residente hubiera pagado una contribución de $120.60; la peticiona-

_____

(⁵) Véase la nota 4.

ria como no residente tenía que pagar $1,001.07 adicionales, o sea un total de $1,121.67.

El caso de *Fiddler* y el presente son similares en que al contribuyente en ambos casos se le negó el derecho a deducciones por exención personal y créditos por dependientes. Y la diferencia en el tipo de contribución para residentes y no residentes, al aplicarse al contribuyente en este caso, es mucho mayor que en los casos de *Fiddler* y *Ahumada*. Es obvio que si estos casos fueron resueltos correctamente, son decisivos aquí. Pasamos por lo tanto a la contención del Tesorero de que los casos de *Fiddler* y *Ahumada* fueron resueltos erróneamente.

En el caso de *Fiddler* descansamos en parte en aquella disposición de la Sección 1 de la Enmienda Décimocuarta que prescribe: ''Ningún Estado podrá dictar, ni hacer cumplir ley alguna que menoscabe los privilegios e inmunidades de los ciudadanos de los Estados Unidos . . . '' Esto constituyó un error. La Enmienda Décimocuarta se aplica exclusivamente a los Estados. No es aplicable a Puerto Rico, que no es un Estado sino un territorio organizado no incorporado a los Estados Unidos. *Buscaglia* v. *Ballester,* 162 F.2d 805, 807 (C.C.A., 1, 1947); *South Porto Rico Sugar Co.* v. *Buscaglia,* 154 F.2d 96, 101 (C.C.A., 1, 1946); *People of Puerto Rico* v. *Eastern Sugar Associates,* 156 F.2d 316, 322 (C.C.A., 1, 1946); *Roig* v. *People of Puerto Rico,* 147 F.2d 87, 91 (C.C.A., 1, 1945). Véase *Hooven & Allison Co.* v. *Evatt,* 324 U.S. 652, 673-4.

En la opinión de *Fiddler* este Tribunal no discutió expresamente el Artículo IV, Sec. 2, inciso 1 de la Constitución, que reza así: ''Los ciudadanos de cada Estado tendrán derecho a todos los privilegios e inmunidades de los ciudadanos en los diversos estados. Sin embargo, citamos con aprobación del caso de *Traois* v. *Yale & Towne Mfg. Co.,* 252 U.S. 60, 77-78, 79, que fué resuelto bajo esta disposición constitucional. También cometimos error sobre este

particular. El Artículo IV, Sec. 2, inciso 1 no tiene aplicación alguna a territorios. Por sus términos expresos protege solamente los privilegios e inmunidades de un ciudadano de un Estado contra menoscabo de aquéllos en otro Estado. *Haavik* v. *Alaska Packers Assn.,* 263 U.S. 510; *Duchay* v. *Acacia Mut. Life Ins. Co.,* 105 F.2d 768, 775 (C.C.A., D.C., 1939).

■ No nos detenemos a determinar el efecto de la reciente inclusión en el artículo 2 del Acta Orgánica de una cláusula de privilegios e inmunidades.([6]) Suponiendo, sin decidirlo, que esta ley entró en vigor inmediatamente, de su faz ésta se aplica prospectiva, no retroactivamente. El Congreso no tuvo la intención de que los contribuyentes que habían pagado una contribución de otro modo válida debían penalizarse a favor de otros contribuyentes que impugnaron la contribución y arguyen ahora que el Congreso vino en su ayuda con este estatuto. Por tanto no afecta la responsabilidad de esta contribuyente por contribuciones debidas en 1944 sobre ingresos de 1943 bajo la Ley de Contribuciones Sobre Ingresos según ésta leía en aquel tiempo.

■ En vista de nuestra conclusión de que las cláusulas de privilegios e inmunidades no desempeñan papel alguno en este caso, creemos innecesario examinar la contención del Tesorero de que tal cláusula protege solamente los privilegios e inmunidades de la ciudadanía nacional según ésta se distingue de la estatal, y que el discrimen en este caso no envolvía una infracción de los privilegios e inmunidades de la ciudadanía nacional. Véase *Madden* v. *Kentucky,* 309 U.S. 83, dejando sin efecto *Colgate* v. *Harvey,* 296 U.S. 404;

---

([6])La sección 7 de la Ley Pública núm. 362, del 5 de agosto de 1947, lee como sigue:

"El artículo 2 de dicha Carta Orgánica (48 U.S.C., sec. 737) queda por la presente enmendado añadiéndole al final el siguiente párrafo nuevo:

" 'Los derechos, privilegios e inmunidades de los ciudadanos de Estados Unidos serán respetados en Puerto Rico en la misma forma como si Puerto Rico fuere un Estado de la Unión y sujeto a las disposiciones del inciso 1 de la Sección 2 del Artículo IV de la Constitución de Estados Unidos.' "

opinión disidente en *Colgate* v. *Harvey,* págs. 443–50; *Hague* v. *C.I.O.,* 307 U.S. 496, 520, nota 1; *Adamson* v. *California,* 332 U.S. 46; McGovney, *Privileges or Immunities Clause, Fourteenth Amendment,* 4 Iowa L. Bull. 219, según reimpreso en 2 *Selected Essays on Constitutional Law* 402. Pero *cf. Smith* v. *Loughman,* 157 N.E. 753 (N.Y., 1927).

 También resolvimos en el caso de *Fiddler* que la diferencia en los tipos contributivos y en los créditos violaba el artículo 2 del Acta Orgánica, 48 U.S.C. sec. 737, al efecto de que "las leyes para la imposición de contribuciones en Puerto Rico serán uniformes." Sin embargo, esta cláusula no requiere uniformidad intrínseca; requiere únicamente uniformidad geográfica a través de todo Puerto Rico. *South Porto Rico Sugar Co.* v. *Buscaglia, supra; Ballester* v. *Tribunal de Contribuciones,* 61 D.P.R. 474, 490–92, ratificado en 142 F.2d 11, 18.

El caso de *South Porto Rico* envolvía la validez de un estatuto que imponía contribuciones sobre ingresos más altas a una corporación extranjera, no autorizada a hacer negocios en Puerto Rico y que no hacía negocios en Puerto Rico, que a una corporación doméstica. La Corte de Circuito de Apelaciones dijo a la pág. 100:

". . . Es un principio bien establecido que la disposición sobre uniformidad requiere solamente uniformidad geográfica y no intrínseca. (Citas.) Bajo esta doctrina, no puede atacarse la uniformidad porque sea una clasificación arbitraria a no ser que tal clasificación discrimine sobre una base geográfica. Un discrimen infringe la disposición sobre uniformidad solamente cuando la Asamblea Legislativa discrimina a favor o en contra de personas en un sector determinado del territorio. Además, la disposición sobre uniformidad del Acta Orgánica dice que las leyes para la imposición de contribuciones en Puerto Rico serán uniformes. La Ley no dice que las leyes contributivas de Puerto Rico serán uniformes. La contribuyente, no estando en Puerto Rico, no ha sido expuesta al discrimen prohibido por la Ley. . . ."

El principio establecido por la Corte de Circuito en el caso de *South Porto Rico* se aplica a los hechos de este caso.

Toda vez que las leyes que ahora consideramos no disponen diferentes tipos contributivos para diferentes sitios dentro de Puerto Rico, dichas leyes no infringen la cláusula de uniformidad, que es peculiarmente territorial en su contexto y está limitada a los linderos geográficos de Puerto Rico. Además, la contribuyente "no estando en Puerto Rico, no ha sido expuesta al discrimen prohibido por la Ley [Orgánica]."(⁷)

La contribuyente alegó en su querella ante el Tribunal de Contribuciones que las leyes aquí envueltas infringían el artículo 2 del Acta Orgánica, que dispone que "No se aprobará en Puerto Rico ninguna ley que . . . niegue a cualquier persona en dicha isla la igual protección de las leyes." (Traducción nuestra.) No consideramos expresamente esta contención en el caso de *Fiddler,* si bien insinuamos que esta cláusula era aplicable a un no residente. Pero aquí también el hecho de que la contribuyente no está dentro de esta jurisdicción, le impide invocar la cláusula de la igual protección. En el caso de *South Porto Rico,* la Corte de Circuito dijo a las páginas 99–100:

"El Tribunal Supremo resolvió que toda vez que la Compañía Azucarera no estaba autorizada a hacer ni hace negocios en Puerto Rico, ésta no estaba dentro de la jurisdicción de Puerto Rico y no

---

(⁷)Un individuo que "residió" en Puerto Rico dentro del significado de la Ley de Contribuciones sobre Ingresos durante una considerable parte del año, con el fin de obtener ingresos aquí, podría concebiblemente alegar que él estaba "en" Puerto Rico dentro del significado de la cláusula de uniformidad, aun cuando él no tenía domicilio aquí. Véase *Buscaglia* v. *Fiddler,* supra; artículo 183, Reglamento núm. 1 de Contribuciones sobre Ingresos. Dicha cuestión no surge aquí, ya que la contribuyente estaba fuera de Puerto Rico durante todo el año contributivo aquí envuelto. De cualquier modo, bajo la Ley tal "residente" temporal de Puerto Rico paga contribución sobre ingresos a los mismos tipos que un "residente" permanente. Pero *quaere,* si (1) nuestra Ley significa que tal "residente" *debe pagar contribuciones sobre todo su ingreso neto,* y no simplemente sobre su ingreso neto proveniente de fuentes dentro de Puerto Rico; y si (2) así se interpretase, si nuestra Ley sería válida en cuanto a la persona que "reside" dentro de Puerto Rico pero no es ciudadano de Puerto Rico y está "domiciliada" en otro sitio. *Cf. Wood* v. *Tawes,* supra. Estas dos cuestiones no están envueltas aquí. En su consecuencia las dejamos sin resolver.

tenía derecho a la igual protección de las leyes. Convenimos con esta decisión. . . . Cuando el Congreso, mediante el Acta Orgánica, aprobó para Puerto Rico disposiciones similares a aquéllas contenidas en nuestra 'Declaración de Derechos' tuvo por miras que tuvieran el mismo efecto que las disposiciones similares de nuestra Constitución. *Ballester–Ripoll* v. *Board of Tax Appeals of Puerto Rico*, supra, a la pág. 18, de 142 F. 2d. Fué su intención que la frase 'en dicha isla' contenida en la cláusula de la igual protección del Acta Orgánica tuviera la misma función que las palabras 'dentro de su jurisdicción' contenida en la cláusula de la igual protección de la Constitución Federal. *U. S. Const.* Amend. XIV, sec. 1. Resolvemos que la Compañía Azucarera no era una persona dentro de la jurisdicción de Puerto Rico de suerte que tenga derecho a la protección conferida por el Art. 2 del Acta Orgánica.''

Al mismo efecto, *Blake* v. *McClung*, 172 U.S. 239, 260–61.([8])

▇▇▇▇▇ Finalmente, la contribuyente afirma que estas leyes infringen la cláusula del debido procedimiento del artículo 2 del Acta Orgánica. En el caso de *Fiddler* no pasamos sobre esta contención. Una vez más encontramos la norma aplicable debidamente expuesta en el caso de *South Porto Rico* a la pág. 100:

'' 'Para que una ley contributiva sea inconstitucional bajo la cláusula del debido procedimiento dicha ley debe ser tan arbitraria que resulte en una confiscación o en una crasa y patente iniquidad e injusticia.' Mertens, Law of Federal Taxation, Vol. 1, sec. 4.09. El efecto de esta norma ha sido que la cláusula del debido procedimiento de la Enmienda Quinta no se ha usado a menudo como medio de declarar nula una ley contributiva federal. Véase al Juez Asociado Sr. Stone, disintiendo en *Heiner* v. *Donnan*, 285 U.S. 312, 338, 52 S.Ct. 358, 76 L.ed. 772. . . . El campo de legislación permisible a las legislaturas estatales es extremadamente amplio. *Wisconsin* v. *J. C. Penney Co.*, 311 U.S. 435, 444, 61 S.Ct. 246, 85 L.ed. 267, 130 A.L.R. 1229. La discreción de la Legislatura de Puerto Rico en tanto en cuanto concierne cuestiones locales es más o menos la misma. *People of Puerto Rico* v. *Shell Co.*, 302 U.S. 253, 261, 262, 58 S. Ct. 167, 82 L.ed. 235. Más aún, corresponde a

([8])La nota 7 también se aplica a la cláusula de igual protección.

aquél que ataca como inválida una pieza legislativa eliminar toda posible base que pueda apoyar su validez. *Madden* v. *Commonwealth of Kentucky,* 309 U.S. 83, 88, 60 S.Ct. 406, 84 L. Ed. 590, 125 A.L.R. 1383; *Metropolitan Casualty Ins. Co. of New York* v. *Brownell,* 294 U.S. 580, 584, 55 S.Ct. 538, 79 L.Ed. 1070.''

Compárense *Neild* v. *District of Columbia,* 110 F.2d 246, 252, 258 (C.C.A., D.C., 1940.)

Al enfocar el problema de determinar si la clasificación hecha por la Legislatura era arbitraria y caprichosa, debemos tener en cuenta que la cláusula del debido procedimiento '' 'no tuvo por miras obligar al Estado a adoptar una regla inflexible de igual imposición de contribuciones' . . . y que ''la presunción de constitucionalidad sólo deja de existir cuando se demuestra hasta la saciedad que una clasificación constituye un discrimen hostil y opresivo contra clases e individuos particulares. Corresponde a aquél que ataca como inválida una pieza legislativa eliminar toda posible base que pueda apoyar su validez.'' *Madden* v. *Kentucky,* 309 U.S. 83, 88; *Rivera* v. *Buscaglia,* 146 F.2d 461, 465 (C.C.A., 1, 1944). Véase *Porto Rico Telephone Co.* v. *Tribunal de Contribuciones,* ante pág. 154.

Aquí no se ha cumplido con dicho deber. Por el contrario, sobre la cuestión de tipos contributivos más altos, como indicó la Corte de Circuito de Apelaciones en una situación algo similar en *South Porto Rico Sugar Co.* v. *Buscaglia,* supra, pág. 100 el ''propósito de la clasificación muy bien pudiera servir para facilitar la administración de leyes contributivas.'' Por ejemplo, los gastos de cobro pueden ser mayores en cuanto a los no residentes; o puede ser difícil, si no imposible, traer a un no residente dentro de la jurisdicción de las cortes locales. ''Además . . . [un residente] tiene más probalidades, mediante las contribuciones pagadas por [sus] empleados y mediante otras contribuciones [tales como arbitrios] . . . de contribuir más al mantenimiento del gobierno que protege las fuentes de donde ob-

tiene [su] ingreso que" un no residente. *South Porto Rico Sugar Co.* v. *Buscaglia,* supra, pág. 101 (corchetes nuestros).

Un pequeño contribuyente residente pagaba una contribución del 10 por ciento y tenía derecho a una exención personal y a créditos por dependientes; un contribuyente similar no residente pagaba una contribución del 28 por ciento sin la exención y sin los créditos.([9]) La diferencia en el importe de la contribución en las clasificaciones inferiores es considerable. Esta contribuyente específica viene obligada a pagar $1,121.67; si fuera residente pagaría $120.60. Pero al leerse la ley en su totalidad, es claro que ella y otros contribuyentes en situación similar no han sido objeto de un discrimen hostil y opresivo. Además de las posibles razones ya indicadas para esta clasificación, la Legislatura por motivos de conveniencia administrativa, puede haber tenido la intención de resolver el difícil problema de tributación al ingreso de individuos no residentes, procedente de fuentes dentro de Puerto Rico, imponiendo un tipo fijo de contribución en vez de los tipos progresivos que se aplican a los residentes. En verdad, existe la analogía, aunque no completa, entre los tipos progresivos para residentes y diferentes tipos para residentes y no residentes. No obstante, si bien la cláusula de uniformidad fué invocada sin éxito alguno, nadie ha sugerido que los tipos progresivos para residentes infringen la cláusula del debido procedimiento. *Ballester* v. *Tribunal de Apelación de Contribuciones,* 61 D.P.R. 474, 490, confirmado en 142 F.2d 11, 18.

Indudablemente que los pequeños contribuyentes no residentes sufren hasta cierto punto con este método administrativo; por otro lado, con excepción de la negativa de la exención personal y los créditos por los dependientes, los contribuyentes no residentes que devengan ingreso neto

([9])Estos tipos son ahora del 12 por ciento comparado con el 29 por ciento. Ley núm. 88, Leyes de Puerto Rico, 1945 ((1) pág. 313); Ley núm. 433, Leyes de Puerto Rico, 1947 ((1) pág. 889).

mayor de $25,000 de fuentes dentro de Puerto Rico son de hecho favorecidos sobre los contribuyentes residentes que devengan ingresos netos mayores de .$25,000. No podemos decir que el cuadro en conjunto demuestra un discrimen hostil y opresivo contra los no residentes, y que el contribuyente ha eliminado toda posible base que pudiera sostener la clasificación. Por el contrario, la Legislatura en el ejercicio de su discreción y a la luz de las consideraciones prácticas ha desarrollado, lo mismo que en el caso de los tipos progresivos para residentes, "un método equitativo de distribuir las responsabilidades económicas del gobierno . . . ". *N. Y. Ex. Rel. Cohn* v. *Graves,* 300 U.S. 308, 313.

Resta ahora la cuestión sobre la exención personal y los créditos por dependientes. Toda vez que un no residente presumiblemente no incurre en gastos para su subsistencia en Puerto Rico, no es caprichoso negarle una exención personal. Esta misma razón se aplica a la negativa de los créditos por dependientes, con el factor adicional de que pudiera ser difícil, si no imposible, para el Tesorero cerciorarse de la veracidad de las planillas que reclamen créditos por dependientes no residentes.

Si bien la analogía no es completa, en la Ley Federal el Congreso, al imponer contribuciones a los extranjeros no residentes, ha provisto diferentes tipos contributivos bajo ciertas circunstancias y ha limitado los créditos y las exenciones. *Cf.* Seghers, *Federal Income Taxes on Foreign Transactions and Foreign Persons,* 26 Taxes 108, 112–13 (February, 1948) ; 8 Mertens, *Law of Federal Income Taxation,* sec. 45.16, pág. 257, *et seq.;* Angell, *The Nonresident Alien: A Problem in Federal Taxation of Income,* 36 Col. L. Rev. 908.

El caso de *Ballester* v. *Tribunal de Apelación de Contribuciones,* supra, 495–500, resuelve que la imposición de un tipo contributivo mayor sobre ingreso de extranjeros residentes que sobre el ingreso de ciudadanos residentes in-

fringe las cláusulas de igual protección y de uniformidad del Acta Orgánica. Dicho caso es distinguible. Como ya se ha indicado, un no residente no tiene derecho a invocar dichas cláusulas. Y, si bien el debido procedimiento no estaba envuelto en dicha decisión, en el caso de extranjeros residentes no concurren las diversas consideraciones que justifican una contribución algo mayor sobre los no residentes.

El Tribunal de Contribuciones, desde luego, actuó correctamente al seguir los casos de *Fiddler* y *Ahumada*. Pero en tanto en cuanto dichos casos resolvieron que un no residente, que no es ciudadano de Puerto Rico, tenía derecho a invocar las cláusulas de privilegios e inmunidades de la Constitución y las cláusulas de uniformidad y de igual protección del Acta Orgánica, quedan expresamente revocados por haber sido erróneamente resueltos.

*La decisión del Tribunal de Contribuciones será revocada y se dictará sentencia desestimando la querella de la contribuyente.*