RAFAEL BUSCAGLIA, TESORERO DE PUERTO RICO, peticionario, *v.* TRIBUNAL DE CONTRIBUCIONES DE P. R., demandado; TEÓDULO LLAMAS MUÑIZ, interventor.

Núm. 136.—*Sometido:* Noviembre 14, 1947. *Resuelto:* Julio 9, 1948.

---

(¹) Véase la cita del caso de *Olson* v. *U. S.,* 292 U .S. 246, 255, que hicimos a las páginas 509 y 510, en el de *Pueblo* v. *García,* 66 D.P.R. 504.

100

*Hon. Procurador General Luis Negrón Fernández* y *Carlos Santana Becerra, Procurador General Auxiliar,* abogados del peticionario; *Clemente Ruiz Nazario* y *Francisco L. San Miguel,* abogados del interventor, querellante en el pleito principal.

El Juez Presidente Señor Travieso emitió la opinión del tribunal.

El Tesorero de Puerto Rico, alegando estar autorizado para ello por las disposiciones de la Ley núm. 175 de mayo 15 de 1943 (pág. 631), impuso al señor Teódulo Llamas Muñiz la contribución conocida como "Impuesto de la Victoria", sobre sus ingresos del negocio de exhibición de películas en trece teatros de su propiedad y por él explotados, durante los períodos de 1ro. de enero a 28 de febrero de de 1943, 1ro. de marzo a 30 de junio de 1943 y 1ro. de julio a 31 de diciembre de 1943.

El contribuyente Llamas satisfizo la contribución, solicitó y le fué denegado el reintegro y acudió entonces ante el Tribunal de Contribuciones, alegando: (*a*) que el ingreso sobre el cual se impuso la contribución no era tributable, por no ser determinable y porque provenía de contratos de compraventa en los cuales el contribuyente actuó como contratante, no estando los ingresos provenientes de tales contratos sujetos a la contribución por disposición expresa de la misma Ley núm. 175; y (*b*) porque de resolverse que dichos ingresos son tributables, la referida Ley sería nula

por establecer un discrimen en contra del contribuyente y negar a éste la igual protección de las leyes, ya que a las personas jurídicas que se dedican al mismo negocio no se les cobra el impuesto de la victoria.

La suma reclamada, incluyendo intereses y multas administrativas, asciende a $8,590.04.

El Tesorero nos pide que revisemos y anulemos la Resolución de noviembre 20 de 1946, por la cual el Tribunal de Contribuciones declaró con lugar la querella en todos sus extremos, basando su petición en la alegada comisión de los siguientes errores:

1. Porque no obstante haber resuelto que los ingresos del contribuyente no procedían de contratos de compraventa, expresamente exentos por la Ley, el Tribunal recurrido sostuvo que el ingreso en este caso no es tributable por no derivarse de ninguna de las fuentes de ingresos expresamente mencionadas en el artículo 1 de la Ley núm. 175.

2. El Tribunal inferior erró al sostener que la intención del legislador fué la de imponer el tributo sobre los ingresos líquidos y no a las entradas brutas (*gross receipts*) sino cantidades de determinados ingresos brutos (*gross income*).

3. El Tribunal recurrido cometió error al resolver que de considerarse tributable el ingreso del interventor, ello haría que la Ley fuese nula e inconstitucional.

I

██ El artículo 1 de la Ley núm. 29 de diciembre 7 de 1942 ((2) pág. 161), enmendado por la Ley núm. 175 de 15 de mayo de 1943, pág. 631, dispone:

"Artículo 1.—Por la presente y hasta seis (6) meses después del cese de las hostilidades entre Estados Unidos de América y Alemania, Italia y Japón, se impone y se cobrará y pagará *en adición a cualquiera otra contribución impuesta por la Ley de Contribución sobre Ingresos de 1924,* una contribución de cinco (5) por ciento sobre el *ingreso bruto de todo individuo,* en exceso de quince dólares cinco centavos ($15.05) semanales, por concepto de intereses, rentas,

sueldos, salarios, jornales, honorarios, donaciones, compensaciones, remuneraciones, comisiones, premios, dividendos, beneficios en sociedades civiles o mercantiles, anualidades *y cualesquiera ingresos de otra naturaleza que sean en efectivo, sean determinables y no provengan de contratos de compraventa* en los que, quien los recibe, hubiese actuado como contratante, o de reembolsos, devoluciones de depósitos, liquidaciones, herencias, préstamos, pagos de préstamos y *otras operaciones similares.* . . . Se entenderá por *ingreso bruto* toda cantidad de dinero que, procediendo de los conceptos antes enumerados como sujetos al pago del impuesto, sea realmente recibida por el contribuyente o depositada o consignada a su favor o para su beneficio. . . . La palabra 'individuo' según la misma ha sido usada en esta Ley, significa persona natural e incluye: etc.'' (Bastardillas nuestras.)

El mismo artículo 1 dispone además lo siguiente:

''En el caso de rentas se deducirá también como exención cualquier cantidad efectivamente pagada por concepto de intereses por gravámenes sobre la propiedad que produzca la renta. De los ingresos tributables por esta Ley se deducirán también, como exentas, las sumas recibidas por concepto de compensaciones por accidentes del trabajo; las becas para estudios; las sumas pagadas por el contribuyente durante el año contributivo por concepto de primas de pólizas de seguro de vida sobre su propia vida, o la de su esposa, o las de sus hijos, o de pólizas de seguro contra accidentes o para fines educativos, hasta una suma total de seguros de veinticinco mil (25,000) dólares; etc.''

Convenimos con el peticionario y con el Tribunal de Contribuciones en que los ingresos del interventor por concepto de su negocio de exhibición de películas no son ingresos procedentes de contratos de compraventa entre el exhibidor de las películas y las personas que compran las entradas para poder asistir a la exhibición. Para que exista un contrato de compraventa es necesario que una parte se obligue a entregar una cosa determinada y la otra a pagar por ella un precio cierto, en dinero o signo que lo represente. Artículo 1334 Código Civil, Ed. de 1930; Manresa, Comentarios al Código Civil Español, Vol. 10, pág. 123. La relación jurídica entre el exhibidor de películas y el público que asiste

a los espectáculos es la que surge de los contratos de arrendamiento de cosas o de servicios, en los cuales una de las partes se obliga a dar a la otra el goce o uso de una cosa por tiempo determinado y precio cierto o a prestarle un servicio por precio cierto. Artículos 1433 y 1434, Código Civil, 1930. Las cortes de los estados y las federales[1] han considerado el negocio de exhibición de películas, no como una compraventa y sí como un recreo, deporte o diversión (*amusement*) al igual que un circo, el boxeo o el *base-ball.*

II

Habiendo ya resuelto que los ingresos provenientes del negocio de exhibición de películas no pueden ser considerados como procedentes de "contratos de compraventa en los que, quien los recibe hubiese actuado como contratante", veamos ahora si dichos ingresos están comprendidos dentro de algunas de las otras excepciones establecidas por el artículo 1 de la Ley, supra. Esas excepciones son aquellos ingresos que siendo en efectivo y determinables no provengan (*a*) de reembolsos, (*b*) devoluciones de depósitos, (*c*) liquidaciones, (*d*) herencias, (*e*) préstamos, (*f*) pagos de préstamos, y (*g*) otras operaciones similares. Es obvio que los ingresos derivados del negocio de exhibiciones cinematográficas no caen dentro de ninguna de las excepciones específicamente enumeradas bajo las letras (*a*) a (*f*) inclusive.

III

¿Están los ingresos brutos procedentes del negocio de exhibiciones de películas comprendidos entre los sujetos al pago del impuesto de la victoria? Esa es la principal cuestión que debemos resolver.

(1) *Dun & Bradstreet* v. *City of New York,* 11 N.E.2d 728; *Andersen* v. *City of N. Y.,* 15 N.Y. Supp.2d 155; *Mutual Film Corp.* v. *Ind. Com. of Ohio,* 236 U.S. 230, 247; *Fox Film Corp.* v. *Trumbull,* 7 F.2d 715, apelación desestimada en 269 U.S. 597; *Paramount Pictures* v. *Langer,* 306 U.S. 619; *Eureka Productions* v. *Lehman,* 302 U.S. 634; *Marrone* v. *Washington Jockey Club,* 227 U.S. 633.

De acuerdo con el artículo 1 de la Ley del Impuesto de la Victoria, supra, la contribución de 5 por ciento se impone "sobre el ingreso bruto de todo individuo", en exceso de $15.05 semanales, siempre que dicho ingreso provenga de uno de los catorce conceptos—intereses, rentas, sueldos, salarios, jornales, honorarios, donaciones, compensaciones, remuneraciones, comisiones, premios, dividendos, beneficios en sociedades civiles o mercantiles, anualidades—específicamente mencionados en dicho artículo, y sobre "cualesquiera ingresos de otra naturaleza que sean en efectivo, sean determinables y no provengan de contratos de compraventa . . . o de reembolsos, devoluciones de depósitos, liquidaciones, herencias, préstamos, pagos de préstamos y otras operaciones similares." "Ingreso bruto", a los efectos de la Ley es toda cantidad de dinero, procedente de los conceptos enumerados en el artículo 1, que sea realmente recibida por el contribuyente o depositada o consignada a su favor o para su beneficio.

El Tribunal recurrido, aplicando la regla de *expressio unius est exclusio alterius,* llegó a la conclusión, que calificó de inevitable, de que los ingresos recibidos por el contribuyente Llamas no son tributables; que la Ley del Impuesto de la Victoria "es aplicable tan sólo a los *ingresos líquidos* de naturaleza especial que se enumeran en el artículo 1 de la misma"; y que si por interpretación judicial se extendiera a los ingresos de exhibiciones de películas, "tendríamos que permitir que para la computación del ingreso tributable de individuos se dedujeran todos los gastos ordinarios y necesarios en que tuvieran ellos que incurrir para la obtención del ingreso", pues "ésta sería la única forma de equiparar su ingreso en tales conceptos con los ingresos líquidos de naturaleza especial que enumera la Ley."

El Tesorero recurrente admite que los ingresos del contribuyente Llamas no proceden de ninguna de las catorce fuentes específicamente enumeradas en la Ley, pero insiste

en que dichos ingresos están sujetos a tributación, por haberlo dispuesto así el legislador al añadir a renglón seguido de la enumeración de las catorce fuentes de ingreso la frase "y cualesquiera ingresos de otra naturaleza que sean en efectivo, sean determinables y no provengan de contratos de compraventa, etc."

El contribuyente, aquí interventor, basándose en la máxima de *ejusdem generis* arguye que "la única interpretación a darse a la frase 'y cualesquiera ingresos de otra naturaleza que sean en efectivo' es la de que estos ingresos han de ser de naturaleza análoga, semejante o similar a los catorce (14) términos o conceptos específicos que la preceden, y no a cualesquiera otros que sean disímiles o distintos a éstos en su esencia o alcance."

No estamos conformes con la interpretación que el interventor pretende dar al estatuto, ni tampoco con que la máxima de "ejusdem generis" sea aplicable en el caso que estamos considerando.

En 28 C. J. sec. pág. 1049, encontramos la siguiente definición:

"*Ejusdem generis.* Literalmente 'de la misma naturaleza o especie.' Una bien conocida máxima de interpretación, llamada a veces La Regla de Lord Tenderson, para ayudar a determinar el significado de un estatuto u otro documento, consistiendo la doctrina en que, *cuando una enumeración de cosas específicas es seguida por alguna palabra o frase general, esa palabra o frase general debe considerarse como que se refiere a cosas de la misma naturaleza,* como en el caso de una frase abarcadora, tal como el término '*otherwise*' con respecto a una clasificación inmediatamente precedente." (Bastardillas nuestras.)

En 2 Sutherland *Statutory Construction,* 3ra. Edición, pág. 400, se enumeran las condiciones que deben existir para que la doctrina sea aplicable:

"La doctrina se aplica cuando existen las siguientes condiciones: (1) el estatuto contiene una enumeración por palabras específicas; (2) los miembros de la enumeración constituyen una clase; (3) la

enumeración no cubre toda la clase; (4) un término general sigue a la enumeración; y (5) no se manifiesta claramente la intención de que se le dé al término general un significado más amplio que el exigido por la doctrina.''

Véase: *Puerto Rico Ilustrado* v. *Buscaglia*, 64 D.P.R. 914, 921.

Convendríamos con el interventor en cuanto a la aplicabilidad de la máxima de ''ejusdem generis'', si el legislador, después de enumerar las catorce clases de ingresos sujetos al pago del impuesto, hubiese añadido las palabras ''y cualesquiera otros ingresos que sean en efectivo.'' Si ése fuera el lenguaje del estatuto, tendríamos que convenir, de acuerdo con la citada máxima, en que la frase ''cualesquiera otros ingresos'', tendría que referirse necesariamente a ingresos de naturaleza igual o similar a la de las catorce clases de ingresos específicamente enumerados en el estatuto. Empero, el legislador, después de especificar catorce clases de ingresos tributables, hace extensivo el impuesto de la Victoria a ''cualesquiera ingresos de *otra* naturaleza''. Sería arbitrario y absurdo sostener que donde el legislador dijo que el impuesto debe recaer sobre las catorce clases de ingresos específicamente enumerados y, además, sobre ''cualesquiera ingresos de *otra* naturaleza'', lo que en realidad quiso decir fué que la contribución recaería sobre ''cualesquiera ingresos de la *misma* naturaleza'' que los anteriormente especificados. Tal interpretación estaría en pugna con el lenguaje claro y preciso del estatuto.

Ya hemos visto que la frase ''ejusdem generis'', literalmente interpretada, quiere decir ''de la misma naturaleza o especie.'' En el Diccionario de la Lengua Castellana encontramos las siguientes definiciones:

> ''*Naturaleza.* Esencia y propiedad característica de cada cosa. Especie, género, clase.''
>
> ''*Especie.* Conjunto de caracteres comunes por los cuales unas cosas se asemejan a otras.''

*"Género.* (*Del Latín genus, generis*). Especie. Hist. Nat. Conjunto de especies que tienen cierto número de caracteres comunes."

*"Otro, Otra.* (Del Lat. *Alterum,* acusativo de 'alter'.) Adjetivo. Aplícase a la persona o cosa distinta de aquélla de que se habla."

Debemos presumir que las palabras "cualesquiera ingresos de otra naturaleza" han sido empleadas en su acepción primaria y general. Sección 29, Ley de Evidencia. Artículo 391, Código de Enjuiciamiento Civil, Ed. 1933. Tomando, pues, dichas palabras en su acepción gramatical primaria, tenemos que llegar a la conclusión de que la intención legislativa fué la de someter al pago del Impuesto de la Victoria no solamente a las catorce clases de ingresos específicamente mencionados en el estatuto sino también a cualesquiera otros ingresos de naturaleza o clase distinta a la de las catorce clases expresamente mencionadas. Arguye el interventor que esa interpretación sería correcta si el legislador hubiese usado la frase "y cualesquiera ingresos de *otra* naturaleza *distinta.*" Carece de fuerza el argumento. La adición de la palabra "distinta" a la frase que estamos interpretando daría lugar a una redundancia, pues las palabras "ingresos de otra naturaleza" no pueden significar otra cosa que ingresos de naturaleza distinta de la de los otros ingresos específicamente enumerados.

El Tribunal de Contribuciones erró al resolver que la Ley del Impuesto de la Victoria no es aplicable a los ingresos derivados del negocio de exhibiciones de películas cinematográficas.

IV

En su querella ante el Tribunal de Contribuciones y en su alegato ante este Tribunal, el contribuyente, aquí interventor, sostiene que la Ley núm. 175 de 1943, en contravención de las disposiciones del artículo 2 de la Carta Orgánica, al efecto de que "no se pondrá en vigor en Puerto Rico ninguna ley . . . que negare a una persona de dicha isla la protección igual de las leyes" y que "las leyes para

la imposición de contribuciones en Puerto Rico serán uniformes", establece un discrimen ilegal en contra de los individuos o personas naturales y a favor de las corporaciones dedicadas a la misma clase de negocios. Sostiene el interventor que una clasificación basada en la mera distinción entre individuos y personas jurídicas es claramente arbitraria, irrazonable, discriminatoria, nula e inconstitucional; que aquí no se trata de diferentes clases sino de una misma clase, la de operadores o explotadores de espectáculos públicos; que la ley impone el tributo a algunos dentro de dicha clase, a los individuos, mientras exime a otros, las corporaciones, no estando tal clasificación relacionada con el objeto de la contribución.

En apoyo de su contención el contribuyente interventor ha sometido a nuestra consideración las siguientes decisiones:

*Quaker City Cab Co.* v. *Penna,* 277 U.S. 389, 72 L. ed. 927; *Frost* v. *Corporation Commission,* 278 U.S. 515, 553, 73 L. ed. 483–491; *Atchison, etc. Railroad Co.* v. *Mathews,* 174 U.S. 96, 43 L. ed. 909; *Redfield* v. *Fisher,* 135 Or. 180, 292 Pac. 813 (*certiorari* denegado en 284 U.S. 617), y *Gamble-Robinson Fruit Co.* v. *Thoresen,* 204 N.W. 861, 42 A.L.R. 1039.

Las decisiones que acabamos de citar no son de aplicación al caso de autos. No se trata aquí, como en los citados casos, de la imposición de una contribución especial sobre un negocio determinado—el de exhibiciones de películas—eximiendo de ella a las corporaciones y haciéndola recaer exclusivamente sobre los individuos que se dedican a ese negocio. Se trata, según resolvimos en *Rivera* v. *Corte,* 62 D.P.R. 513, de "la imposición de cierta contribución adicional sobre ingresos a la cual se le da el nombre de Impuesto de la Victoria."

Al confirmar la sentencia de este Tribunal en *Rivera* v. *Corte*, supra, la Corte de Circuito se expresó así (146 F.2d 461, 465):

"Aun cuando se ha reconocido con bastante frecuencia que una clasificación estatutaria puede ser tan odiosa y tan carente de base racional hasta el punto de violar las garantías constitucionales, son pocos y espaciados los casos en que una ley de contribuciones ha sido invalidada por ese motivo. En el campo contributivo, más que en ningún otro 'las legislaturas poseen la mayor libertad para clasificar. Considerando que los miembros de una legislatura están necesariamente mejor familiarizados con las condiciones locales que lo que pueda estarlo esta Corte, la presunción de constitucionalidad puede ser controvertida solamente por la más explícita demostración de que una clasificación es un discrimen hostil y opresivo contra determinadas personas y clases.' (Cita.)"

Al considerar la imposición de una contribución "en adición a cualquiera otra contribución impuesta por la Ley de Contribuciones sobre Ingresos de 1924", haciéndola aplicable a los individuos y no a las corporaciones, es posible que la Legislatura tuviese en mente el hecho de que la Ley de Contribuciones Sobre Ingresos divide a los contribuyentes en dos clases, (*a*) individuos y (*b*) corporaciones y sociedades, imponiendo a cada una de dichas clases tipos contributivos distintos y concediendo a cada una deducciones y créditos diferentes; y, además, que en adición a la contribución que sobre sus ingresos está obligada a pagar toda corporación, sus accionistas tienen que pagar, como individuos, la contribución correspondiente a los dividendos recibidos de la corporación. Siendo ello así, tenemos que llegar a la conclusión de que la clasificación establecida por la ley del Impuesto de la Victoria es consistente con la cláusula de igual protección de la ley, por estar basada en una diferencia real y sustancial, que tiene una relación razonable con el sujeto de la legislación. Resolvemos además que esta ley no infringe las disposiciones de la Carta Orgánica de que "la regla de tasación en Puerto Rico será uniforme".

Esta cláusula no requiere uniformidad intrínseca; requiere solamente uniformidad geográfica en todo Puerto Rico, según lo dispone esta ley. *South Porto Rico Sugar Co.* v. *Buscaglia,* 154 F.2d 96; *Ballester* v. *Court of Tax Appeals,* 142 F.2d 11; *Buscaglia* v. *Tribunal de Contribuciones,* y *Pérez Vahamonde, Interventor,* 68 D.P.R. 345.

V

Consideraremos ahora la última cuestión levantada por el Tesorero o sea si el Tribunal de Contribuciones erró "al sostener que solamente fué la intención del legislador el tributar los *ingresos líquidos* tales como los mencionados en la Ley, y no fué su intención tributar las entradas brutas (*gross receipts*) sino cantidades de determinados ingresos brutos (*gross income*)."

Conviene recordar que el artículo 1 de la Ley, supra, dispone que "Se entenderá por *ingreso bruto* toda cantidad de dinero que, procediendo de los conceptos antes enumerados como sujetos al pago del impuesto, sea realmente recibida por el contribuyente o depositada o consignada a su favor o para su beneficio."

El artículo 11 de la misma ley dispone que "el Tesorero organizará, dirigirá y mediante reglas y reglamentos al efecto, administrará la ejecución de esta ley . . ."

En agosto 13 de 1943 el Tesorero adoptó un reglamento para la ejecución de la Ley. La Regla núm. II contiene una definición del "ingreso bruto" en los mismos términos en que aparece en el artículo 1 de la Ley, supra. Dicha Regla núm. II dispone, además, lo siguiente:

"Gastos Fijos o Cargos Fijos. (*Overhead expenses or Overhead charges*)—(B) Gastos fijos o cargos fijos se definen como aquellos comprendidos en gastos generales, gastos, etc., en cualquier negocio que no puedan cargarse como pertenecientes exclusivamente a una parte en particular del trabajo o producto. La palabra gasto fijo (overhead) se define como significativa de aquel gasto general en una empresa industrial o financiera que no pueda atributarse a

ningún departamento o producto en particular. *Excluyendo costo de materiales y mano de obra.*

"(c) Los gastos habidos por el contribuyente aunque sean necesarios o indispensables para poder obtener el ingreso, no son deducibles para determinar el 'ingreso bruto'; . . ."

La Regla núm. XIII titulada "Deducciones Admisibles para determinar el ingreso bruto tributable", enumera las deducciones que de acuerdo con la ley se conceden al contribuyente. Esas deducciones son: (1) la de $15.05 semanales dispuesta por la ley; (2) los intereses por gravámenes sobre la propiedad que produce la renta; (3) las primas de pólizas de seguros de vida, contra accidentes o para fines educativos hasta una suma total de seguros de $25,000. La Regla núm. XIV enumera los ingresos recibidos por el contribuyente que no estarán sujetos a la contribución, que son los mismos especificados en el artículo 1 de la ley, supra.

De la prueba presentada ante el tribunal inferior aparece que al determinar el ingreso bruto tributable el Tesorero concedió al contribuyente apelante deducciones por diversos conceptos tales como luz, hielo, renta, reparación de equipos, agua, salarios, teléfono, materiales, transportación de películas, tickets, carbones, seguros de empleados, uniformes de empleados; y que el mismo funcionario se negó a conceder deducciones por concepto de contribuciones, honorarios de abogado, anuncios, regalos, dádivas, derechos municipales sobre letreros, seguro contra responsabilidad pública, intereses sobre deuda, depreciación de edificios y equipo.

El Tribunal de Contribuciones, después de considerar toda la prueba, se expresó así:

"Se nos hace difícil imaginarnos por qué el Tesorero concedió unas deducciones y rechazó otras. Permitió que el apelante dedujera gastos en concepto de luz, renta, agua, salarios, etc. y no concedió las partidas correspondientes a anuncios, contribuciones, depreciación de edificios y equipos, patentes municipales, seguros,

etc. No los rechazó porque no los considerara gastos ordinarios y necesarios incurridos en la explotación del negocio, sino porque no los consideró deducibles.''

Teniendo en mente la definición del ''ingreso bruto'' contenida en el artículo 1 de la Ley, supra, y las deducciones específicamente concedidas al contribuyente por la misma ley, no podemos convenir con el Tribunal recurrido en cuanto a que el Tesorero procediera ilegalmente al negarse a conceder las deducciones ya mencionadas. No hemos encontrado en la ley que estamos considerando ni tampoco en el reglamento disposición alguna que imponga al Tesorero la obligación de conceder tales deducciones. El deber del Tesorero es el de conceder al contribuyente todas las deducciones y exenciones concedidas por la ley. No apareciendo del récord prueba alguna que demuestre que el Tesorero dejara de cumplir ese deber, el cómputo practicado por dicho funcionario debe ser respetado.

*La resolución recurrida debe ser revocada. En su lugar se dictará sentencia declarando sin lugar la querella.*

El Juez Asociado Sr. De Jesús no intervino.