EARLE T. FIDDLER, peticionario, *v.* TRIBUNAL DE CONTRIBUCIONES DE PUERTO RICO, demandado, RAFAEL BUSCAGLIA, TESORERO DE PUERTO RICO, interventor.

Núm. 52.—*Sometido:* Mayo 21, 1945. *Resuelto:* Julio 6, 1945.

*H. S. McConnell* y *Jorge M. Morales,* abogados del peticionario; *Hon. Procurador General Interino Julio Suárez Garriga* y *Zoilo Dueño González, Procurador General Auxiliar,* abogados del interventor, Tesorero de Puerto Rico.

EL JUEZ PRESIDENTE SEÑOR TRAVIESO emitió la opinión del tribunal.

La solicitud de *certiorari* radicada por el contribuyente Earle T. Fiddler se basa en los hechos siguientes:

El peticionario y su esposa son ciudadanos de los Estados Unidos y residentes de Stanford, Estado de Connecticut. En julio 29 de 1942, el Tesorero de Puerto Rico notificó al peticionario una deficiencia de $4034.12 en su declaración de ingresos correspondiente al año contributivo terminado en diciembre 31 de 1936, más intereses al 6 por ciento anual desde junio 15, 1937, hasta agosto 15, 1942, ascendentes a $1,250.58.

En la querella radicada ante el Tribunal de Apelación de Contribuciones, el apelante alegó que el Tesorero había erróneamente consolidado la planilla de Earle T. Fiddler y la rendida por su esposa, Margaret M. Fiddler. El Tribunal declaró con lugar la querella y resolvió que la deficiencia determinada por el Tesorero, como resultado de la consoli-

dación de las planillas, era inexistente, debiendo el Tesorero hacer una nueva liquidación, de acuerdo con los términos de dicha decisión. En octubre 29 de 1943, el Tesorero envió al peticionario una "Notificación y Requerimiento", para el pago de la contribución al tipo que fija la Ley de Contribuciones sobre Ingresos para personas no residentes en Puerto Rico, en vez de al tipo que la misma ley fija para los residentes en esta Isla.

El peticionario acudió de nuevo ante el Tribunal de Contribuciones en solicitud de que se ordenase al Tesorero de Puerto Rico hacer una nueva liquidación, tomando como base el tipo contributivo aplicable a los residentes en la Isla. En apoyo de su contención de que la aplicación de un tipo mayor a los no residentes, es anticonstitucional, el peticionario radicó un memorándum de autoridades. El Tribunal, considerando que la cuestión constitucional planteada es de "indiscutible importancia jurídica", ordenó al representante del Tesorero que radicase un memorándum en contestación al del peticionario. Radicó el Tesorero su memorándum, sosteniendo la constitucionalidad del estatuto que fija un tipo contributivo mayor para los no residentes. En marzo 19 de 1945, el Tribunal dictó su resolución declarando sin lugar la solicitud de nueva liquidación y ordenando al Tesorero que procediese a cobrar la contribución de acuerdo con la decisión dictada en octubre 19 de 1943. En abril 17 de 1945 el Tesorero notificó al peticionario una deficiencia de $229.12 más $107.76 por intereses al 6 por ciento anual desde junio 15, 1937 a abril 17, 1945; y otra deficiencia en la planilla de la señora Fiddler, montante a $271.62, más $127.75 por intereses. Después de pagar las indicadas sumas, bajo protesta, el peticionario interpuso el presente recurso para la revisión y revocación de la resolución dictada por el Tribunal recurrido en marzo 19 de 1945.

El fundamento de la resolución recurrida es, en síntesis, el siguiente: En la querella original, radicada ante el Tri-

bunal de Apelación de Contribuciones, en octubre 8 de 1942, el apelante levantó como única cuestión la ilegalidad de la consolidación de las planillas, hecha por el Tesorero; y no alegó la inconstitucionalidad de la ley que autoriza al Tesorero a imponer a los ciudadanos americanos no residentes en Puerto Rico un tipo contributivo mayor que el fijado por la misma ley para los residentes en la Isla. Opinó el Tribunal que no debía permitirse al querellante levantar cuestiones nuevas de derecho, recurriendo "al subterfugio de una moción de revisión de cálculos, la cual se debe restringir a imputar un cómputo erróneo".

De la notificación de deficiencia enviada al peticionario en julio 29, 1942, aparece que la deficiencia fué determinada a base de la consolidación de las planillas rendidas separadamente por los esposos Fiddler, pero no aparece clara y específicamente que el importe de la contribución que se reclamaba por el Tesorero hubiese sido determinado mediante la aplicación del tipo contributivo fijado por la ley para los ciudadanos no residentes. En la notificación y requerimiento hechos al peticionario en octubre 29, 1943, se hizo constar por primera vez que el importe de la contribución se había calculado tomando como base el tipo de 6 por ciento aplicable a los no residentes. Dicha notificación y requerimiento fué en efecto la notificación de una deficiencia, por razones distintas a las alegadas en la notificación original. Es indudable que de acuerdo con la mejor práctica los querellantes deben levantar en sus querellas originales todas las cuestiones legales de que intenten valerse para solicitar la revocación de las decisiones del Tesorero. No podemos, sin embargo, convenir en que el Tribunal de Contribuciones procediera correctamente al negarse a considerar y resolver la cuestión constitucional que le fué planteada mediante la moción para la revisión de cálculos, cuestión que el mismo Tri-

bunal consideró de "indiscutible importancia jurídica", para ordenar al Tesorero que presentara, como presentó, un alegato sobre sus méritos.

La sección 4 de la Ley núm. 169 de 15 de mayo de 1943, por la cual se confiere jurisdicción exclusiva al Tribunal de Contribuciones para conocer de acciones y procedimientos relacionados con la imposición, cobro, pago o devolución de toda clase de contribuciones, incluyendo las contribuciones sobre ingresos, dispone que los procedimientos ante el Tribunal se regirán por las Reglas del Tribunal, por el Código de Enjuiciamiento Civil y por las Reglas de Procedimiento Civil que promulgue el Tribunal Supremo, "debiendo ser todas dichas disposiciones liberalmente interpretadas y aplicadas con el fundamental propósito de hacer justicia sustancial entre las partes en controversia".

En el caso de autos, el Tribunal de Contribuciones no rechazó de plano la moción para que se hiciese una nueva liquidación. Considerando que la cuestión constitucional levantada era de suma importancia y que su deber era interpretar la ley liberalmente, para hacer justicia sustancial entre las partes, el Tribunal tomó la moción en consideración y obligó al Tesorero a radicar un memorándum de autoridades para justificar su actuación. Hasta ese momento el Tribunal actuó de acuerdo con el espíritu del estatuto. Empero, al resolver la moción, se olvidó del propósito fundamental de hacer justicia sustancial entre las partes, interpretó las reglas de procedimiento restrictivamente, rehusó considerar o resolver la cuestión que le fuera sometida y confirmó las actuaciones del Tesorero, sin tener en cuenta que al así hacerlo estaba tal vez sancionando la violación de los derechos constitucionales de un contribuyente y permitiendo que el Tesorero cobrase sumas en exceso de las permitidas por la ley.

Opinamos que el Tribunal recurrido erró al no considerar la notificación y requerimiento de octubre 29, 1943 como

la notificación de una nueva deficiencia. Procederemos en seguida a considerar y resolver la cuestión constitucional.

 Sostiene el peticionario, que las disposiciones de las secciones 12(a) y 18(b) de la Ley de Contribuciones sobre Ingresos, aprobada en agosto 6 de 1925 (pág. 401) y enmendada por la Ley núm. 18 de junio 3 de 1927 (pág. 487), efectiva en 1 de enero de 1928, por virtud de las cuales se impone a los ciudadanos americanos no residentes en Puerto Rico un tipo de contribución mayor y se le conceden deducciones menos favorables, que el tipo impuesto y las deducciones concedidas a los ciudadanos residentes en esta Isla, están en pugna con los preceptos de la sección 2 de la Carta Orgánica y de la Enmienda Catorce, Sec. 1ª. de la Constitución Federal e infringen los derechos constitucionales del peticionario, al privarle de su propiedad sin el debido procedimiento de ley, al negarle la protección de las leyes y al menoscabar los privilegios e inmunidades a que el peticionario tiene derecho como ciudadano de los Estados Unidos.

Las disposiciones legales impugnadas por el peticionario son las siguientes:

"Sección 12.—(a) Se impondrá, cobrará, y pagará por cada año contributivo sobre el ingreso neto de todo individuo una contribución normal de 6 por ciento del montante del ingreso neto que exceda de los créditos dispuestos en la sección 18, excepto que en el caso de residentes de Puerto Rico el tipo sobre los primeros $4,000 de dicha cantidad excedente será 2 por ciento, y sobre los siguientes $4,000 de dicha cantidad excedente será 4 por ciento."

"Sección 18.—Para los fines de la contribución normal solamente se concederán los siguientes créditos: (a) Las cantidades recibidas como beneficios de sociedades o como dividendos (1) de una corporación doméstica o (2) de una corporación extranjera cuando se demuestre a satisfacción del Tesorero que más de 50 por ciento del ingreso bruto de dicha corporación extranjera por el período de los tres años terminados al cerrar su año contributivo que precede a la declaración de dichos dividendos (o por aquella parte de dicho período durante el cual ha existido la corporación) ha sido derivado de fuentes radicadas dentro de Puerto Rico según se determina a virtud de las disposiciones de la sección 19.

"(*b*) Las cantidades recibidas como intereses de obligaciones de los Estados Unidos, de obligaciones de El Pueblo de Puerto Rico, o de cualquier subdivisión política de los mismos, que se incluyen en el término ingreso bruto a virtud de la sección 15.

"(*c*) En el caso de una persona soltera, una exención personal de $1,000; o en el caso del jefe de una familia o una persona casada que vive con su esposo o esposa, una exención personal de $2,500. Un esposo y esposa que vivan juntos recibirán una sola exención personal. La cantidad de dicha exención personal será de $2,500. Si dicho esposo y esposa rinden declaraciones separadas la exención personal puede ser tomada por cualquiera de los dos o dividida entre ambos.

"(*d*) $400 por cada persona (que no sea el esposo o la esposa) que dependa y reciba el sustento principal del contribuyente si dicha persona dependiente es menor de 21 años de edad o está incapacitada para sostenerse por sí misma por estar mental o físicamente defectuosa."

(*e*) Los individuos no residentes que no sean ciudadanos de Puerto Rico, no tendrán derecho a la exención personal que dispone la subdivisión (*c*) ni a los créditos que se conceden en la subdivisión (*d*)."

De conformidad con lo dispuesto en la sección 12(*a*), supra, al computar la contribución que debía pagar el peticionario, el Tesorero, teniendo en cuenta que el peticionario tiene su residencia en el Estado de Connecticut, le impuso una contribución normal de seis por ciento sobre la totalidad del ingreso neto en exceso de los créditos dispuestos en la sección 18. Sostiene el peticionario que la actuación del Tesorero constituye un discrimen ilegal contra él, por el mero hecho de no ser residente de Puerto Rico; y que él tiene derecho a que se le liquide la contribución al mismo tipo fijado por la ley para los ciudadanos residentes, o sea 2 por ciento sobre los primeros $4,000 del ingreso neto en exceso de los créditos; 4 por ciento sobre los siguientes $4,000 de dicho ingreso neto; y 6 por ciento sobre el resto del ingreso neto.

Nuestras decisiones en *Nitrate Agencies* v. *Domenech,* 44 D.P.R. 515 y en *Ballester* v. *Tribunal,* 61 D.P.R. 474 no son de aplicación al presente caso. En el primero de dichos ca-

sos se trataba de una corporación extranjera autorizada para hacer negocios en Puerto Rico, a la cual el Tesorero rehusó concederle los créditos o deducciones concedidos por la ley a las corporaciones domésticas. Se ordenó la devolución de la cantidad ilegalmente cobrada por el Tesorero. En el caso de *Ballester* el Tesorero impuso a un extranjero residente en Puerto Rico un tipo de contribución mayor que el fijado por la ley para los ciudadanos residentes. Resolvimos que la ley que autorizaba el discrimen en contra de los extranjeros residentes es inconstitucional y nula porque infringe las cláusulas de la Carta Orgánica relativas a la igual protección de las leyes y la uniformidad en las contribuciones.

La cuestión envuelta en el presente caso—la constitucionalidad del discrimen contributivo en favor del ciudadano americano residente y en contra del no residente en la Isla—es nueva en esta jurisdicción.

¿Tiene derecho el ciudadano americano que ha establecido su residencia en uno de los cuarenta y ocho estados de la Unión, a invocar las garantías constitucionales sobre protección igual de las leyes y contra las leyes que puedan menoscabar sus privilegios e inmunidades como ciudadano de los Estados Unidos, para impedir que en otro estado se le imponga, por el mero hecho de no tener su residencia dentro del estado, una contribución mayor que la impuesta a los allí residentes?

En *Travis* v. *Yale & Towne Manufacturing Company,* 252 U. S. 60, 64 L. ed. 460, se alegó la inconstitucionalidad de las secciones 362 y 363 de la Ley de Contribuciones sobre Ingresos del Estado de New York, por virtud de las cuales se concedían a los residentes del Estado ciertas exenciones que se negaban a los no residentes. Al declarar que las citadas secciones eran inconstitucionales, la Corte Suprema se expresó así:

"La Corte de Distrito, . . . sostuvo que la Ley, al conceder a los residentes exenciones negadas a los no residentes, infringió las

disposiciones de la sección 2 del Art. 4 de la Constitución Federal: 'Los ciudadanos de cada estado tendrán derecho a todos los privilegios e inmunidades de los ciudadanos en los diversos estados;' y, no obstante el elaborado e ingenioso argumento en contrario sometido por el apelante, nos vemos obligados a confirmar la decisión.''

Los propósitos fundamentales de la citada cláusula constitucional son: colocar a los ciudadanos de cada estado al mismo nivel que el de los ciudadanos de los demás estados, en todo lo referente a las ventajas y derechos inherentes a la ciudadanía de dichos estados; relevarlos de las incapacidades de la extranjería en los otros estados; prohibir legislación discriminatoria contra ellos; asegurarles el derecho al libre ingreso a y egreso de los demás estados y el derecho a gozar en cada uno de ellos de la misma libertad de que gozan sus ciudadanos, para la adquisición y disfrute de propiedades; y garantizarles en los demás estados la protección igual de sus leyes. Como muy bien dijo el Juez Field, en *Paul* v. *Virginia,* 8 Wall. 168, 19 L. ed. 357: ''Se ha dicho con justicia que ninguna disposición de la Constitución ha contribuído tan fuertemente como ésta, a constituir a los ciudadanos de los Estados Unidos en un pueblo.'' Véase: *Ward* v. *Maryland,* 12 Wall. 418, 20 L. ed. 449.

Continuaremos transcribiendo de la opinión en el caso de *Travis* v. *Yale, etc.,* supra:

''Pero un plan general de contribuciones como el que estamos considerando, si discrimina contra todos los no residentes, tiene necesariamente el efecto de incluir en el discrimen a aquellos que son ciudadanos de otros estados; y, si no existe un motivo razonable para la diferencia en el tratamiento, menoscaba los privilegios e inmunidades a que esos ciudadanos tienen derecho.''

''. . . . . . . . .

''La naturaleza y efecto del crucial discrimen en el presente caso, son manifiestos.''

''. . . . . . . . .

''En concreto, el peso del discrimen recae sobre ciudadanos de Connecticut y New Jersey, estados en los cuales no existen leyes de contribuciones sobre ingresos. Un número considerable de em-

pleados de la demandante, residentes y ciudadanos de uno u otro de dichos dos estados, pasan sus horas de trabajo en las oficinas de la demandante en New York, y allí ganan sus salarios. . . Se dedican a sus diversas ocupaciones, junto a los residentes del estado de New York—en efecto compitiendo con ellos en cuanto a jornales, salarios, y otras condiciones del empleo. Si ellos deben pagar una contribución sobre los primeros $1,000 ó $2,000 de ingreso, mientras sus asociados y competidores que residen en New York no están obligados a pagarla, eso constituye una diferencia sustancial. Bajo las circunstancias expuestas, no podemos· encontrar una base razonable para el discrimen, y nos vemos obligados a decidir que el mismo es una negación injustificada a los ciudadanos de Connecticut y New Jersey, de los privilegios e inmunidades de que gozan los ciudadanos de New York. Éste no es un caso de desigualdad ocasional o accidental, debida a circunstancias personales del contribuyente (citas), sino una regla general que funciona con desventaja para todos los no residentes, incluyendo a aquéllos que son ciudadanos de los estados vecinos, y en favor de todos los residentes, incluyendo a todos los que son ciudadanos del estado que impone la contribución.'' `

Sería injusto, en verdad, sostener que la legislatura no puede constitucionalmente imponer un tipo mayor de contribución a un ciudadano extranjero residente en Puerto Rico, por el mero hecho de su extranjería, como resolvimos en *Ballester* v. *Tribunal,* supra; y que no existe impedimento constitucional alguno para la imposición de ese tipo mayor a un ciudadano de los Estados Unidos, por el mero hecho de ser ciudadano y residente de uno de los estados de la Unión. El extranjero residente está protegido por el precepto constitucional sobre la protección igual de las leyes; y el ciudadano de los Estados Unidos que reside en uno de los estados, del cual es también ciudadano, encuentra su protección contra discrímenes injustificados, basados en el mero hecho de su no residencia, en la Enmienda XIV, sección 1, que provee que ''Ningún Estado aprobará o pondrá en vigor ley alguna por la cual se menoscaben los privilegios o inmunidades de los ciudadanos de los Estados Unidos.''

Somos de opinión que el discrimen de que se queja el peticionario viola las disposiciones específicas de la Carta Orgánica de que "las leyes para la imposición de contribuciones en Puerto Rico serán uniformes". Es indudable que la legislatura está facultada para establecer distintas clasificaciones entre los contribuyentes, pero esas clasificaciones para ser válidas deben tener una base razonable. El mero hecho de que un contribuyente, ciudadano de los Estados Unidos, tenga establecida su residencia en uno de los estados de la Unión, no constituye una base razonable de clasificación é infringe el precepto constitucional que garantiza a todos los ciudadanos de la nación el goce dentro de un estado de los mismos derechos que ese estado concede a sus ciudadanos y residentes. La imposición de penalidades adicionales a los ciudadanos no residentes y el negar a éstos las exenciones contributivas que por la ley de un estado se conceden a sus ciudadanos, son discrímenes que violan los derechos constitucionales de los no residentes y no pueden ser sostenidos. Véanse: *Bachrach* v. *Nelson*, 349 Ill. 579, 182 N. E. 909; *Blaustein* v. *Levin*, 4 A.2d 861, 176 Md. 423; 6 R.C.L. pág. 427, Sec. 424; *Eliasberg Bros. Mercantile Co.* v. *Grimes*, 204 Ala. 492, 86 So. 56, 11 A.L.R. 300, 311.

En *Tesorero de Puerto Rico* v. *Tribunal de Contribuciones de Puerto Rico*, 64 D.P.R. 602, decidimos que las disposiciones de la Ley de Contribuciones sobre Ingresos que imponen a las corporaciones extranjeras autorizadas para hacer negocios en Puerto Rico un tipo de contribución mayor que el impuesto a las corporaciones domésticas, es inconstitucional, porque cuando una corporación extranjera obtiene licencia para hacer negocios en esta Isla, desde ese momento adquiere el derecho constitucional a la igual protección de las leyes insulares.

El peticionario en el presente caso es una persona natural, ciudadano del Estado de Connecticut y allí residente. Como tal ciudadano, el peticionario no necesita obtener li-

cencia alguna para poder entrar a y dedicarse a negocios en Puerto Rico. La Constitución Federal le garantiza el libre acceso a cualquier parte del territorio nacional—constituído por los cuarenta y ocho estados y territorios y posesiones insulares bajo la jurisdicción y control del Gobierno Federal—y el derecho a gozar dentro de ese territorio nacional de los mismos privilegios e inmunidades concedidos por las leyes estatales y territoriales a los ciudadanos residentes dentro del estado o territorio.

Por las razones expuestas, resolvemos que las disposiciones de las secciones 12(*a*) y 18(*b*), (*c*), (*d*) y (*e*), supra, en cuanto por las mismas se impone a los ciudadanos americanos no residentes en Puerto Rico un tipo contributivo mayor y se les niega las deducciones concedidas a los ciudadanos residentes, son anticonstitucionales y nulas.

*La resolución recurrida debe ser anulada y el caso devuelto al Tribunal de Contribuciones para ulteriores procedimientos no inconsistentes con esta opinión.*