874

## LITTLE v. DISTRICT OF COLUMBIA.
### No. 697.

Municipal Court of Appeals for the
District of Columbia.
Dec. 22, 1948.

Jeff Busby, of Washington, D. C., for appellant.

Edward A. Beard, Asst. Corporation Counsel, of Washington, D. C. (Vernon E. West, Corporation Counsel, and Chester H. Gray, Principal Assistant Corporation Counsel, both of Washington, D. C., on the brief), for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CLAGETT, Associate Judge.

Appellant, Geraldine Little, alias Mildred Parker, was charged with and convicted of hindering, obstructing and interfering with a health officer in the performance of his duty in carrying out the provisions of local health regulations.

The account of the arrest given by the government witnesses was as follows: One of the occupants of a residential property belonging to appellant appeared at the Health Department and made a complaint that there was an accumulation of loose and uncovered garbage and trash in the halls of the house and that certain of the residents failed to avail themselves of the toilet facilities. Thereafter under orders of his superior a uniformed officer of the D. C. Public Health Department accompanied by a uniformed member of the Metropolitan Police went to the residence for the purpose of inspection.

The officers were met at the door by one Allen, who was about to enter the premises. The inspector identified himself, told of his mission and asked permission to inspect the

house. Allen refused permission on the ground that the owner was not at home. Appellant, who was then unknown to the officers, was across the street and called to Allen not to permit the officers to enter. Appellant then crossed the street, came upon the porch of the premises, and, after she knew the object of the call, again told Allen not to permit the officers to enter. Appellant at first denied her ownership of the premises and was told to go about her business. Allen was arrested for interfering with a health officer, and taken to a nearby police call box followed by appellant protesting the right of entry. She finally identified herself as the owner of the house and demanded that she be arrested also. She seized the health officer's arm and attempted to grab some papers that he was holding. She was then arrested.

Appellant's own account was substantially the same, except that she claimed she was arrested after denying the officers permission to enter the premises on the ground that her constitutional rights did not require her to submit to the inspection.

Several errors are alleged, but in substance they amount to the assertion that the actions of the health officer were an attempt to carry out an unlawful search of a private dwelling in contravention of the Fourth Amendment to the United States Constitution, and hence that appellant could not be legally arrested for resisting.

The government insists that the case may be resolved without reference to the constitutional propriety of the attempted entry. It is said that appellant's arrest was predicated upon her actions on a public street in interfering with the arrest of Allen. However, the information upon which appellant was convicted charged her with interfering with a health officer, not a police officer. Making arrests is not a part of the duties of a health officer. Furthermore, the case was not tried upon this theory. The trial judge's memorandum opinion deals only with the constitutional issue, and we believe that our decision also must turn upon it.

The police regulation which appellant was convicted of violating was promulgated by the District of Columbia commissioners April 22, 1897, pursuant to a joint resolution of Congress enacted February 26, 1892 (52 Cong., Sess. 1, Res. 1-7, 1892, entitled "Joint Resolutions to Regulate Licenses to Proprietors of Theaters in the City of Washington, District of Columbia, and for Other Purposes." This joint resolution authorized the commissioners to make and enforce all such reasonable and usual police regulations as they might deem necessary, for the protection of lives, limbs, health, comfort, and quiet of all persons and the protection of all property within the District of Columbia. The regulations adopted pursuant to this act provide in part, as follows:

"2. That it shall be the duty of every person occupying any premises, or any part of any premises, in the District of Columbia, or if such premises be not occupied, of the owner thereof, to keep such premises or part, * * * clean and wholesome; if, upon inspection by the Health Officer * * * it be ascertained that any such premises, or any part thereof, or any building, * * * is not in such condition as herein required, the occupant or occupants of such premises or part, or the owner thereof, * * * shall be notified thereof and required to place the same in a clean and wholesome condition; and in case any person shall fail or neglect to place such premises or part in such condition within the time allowed by said notice he shall be liable to the penalties hereinafter provided.

"10. That the Health Officer shall examine or cause to be examined any building supposed or reported to be in an unsanitary condition * * *.

"12. That any person violating, or aiding or abetting in violating, any of the provisions of these regulations, or interfering with or preventing any inspection authorized thereby, shall be deemed guilty of a misdemeanor, and shall, upon conviction * * * be punished by a fine of not less than $5 nor more than $45." [1]

While *all* buildings are included within the scope of the regulation, and thus private dwellings are so included, it is of some significance that special mention is

---

[1] Amendment of July 28, 1922.

made of stores, workshops, tenements and lodging houses.

■ Generally health laws and ordinances are accorded liberal construction because their exercise is largely discretionary. However, when they appear to violate a constitutional right, the courts must carefully weigh the value of the end accomplished against the restriction suffered.[2] It is within the police power of municipal corporations to control and regulate the manner of collection and disposition of garbage, refuse or filth,[3] but regulations of this kind must not unduly infringe upon individual rights.[4]

■ Generally public authorities may employ all necessary means to protect the public health and in so doing may provide for the inspection of premises as a health measure.[5] However, it is to be noted that the overwhelming majority of the cases sustaining this inspection power concern public or quasi-public places. It is clearly within the power of municipal authorities to provide for the inspection of hotels, places where food is served or stored and other public places.[6] The reason for this is patent: There is a prospect of immediate danger to the health of large segments of the public. But where a single private dwelling is concerned the "present danger" is a much more elusive thing. One authority distinguishes the power of inspection as it concerns private premises, pointing out that the constitutional aspect of inspection differs when it is extended to the interior of private houses, and that such inspection should require an affidavit, probable cause and judicial warrant.[7]

■ Unless the condition which is the object of inspection amounts to an immediate danger or a dangerous nuisance per se, it would appear that municipal authorities would be acting beyond their powers in taking any summary action.[8] Since sanitary or quarantine regulations and the like are promulgated by the community for its self-defense, they should not be carried beyond absolute necessity.[9] Most law-abiding householders gladly permit such inspections, especially where the officers are in uniform. But since the regulation itself provides for abatement of such a nuisance only after notice and hearing, it would seem to follow that health officers can not inspect, when challenged, without the usual and ordinary preliminary steps for search. Nothing herein indicates such urgency or immediate danger as to approve the total waiver of these protections. An existing or threatened epidemic might establish a different case. One treatise on public health states that it is the duty of a health officer to make inspections. However, this authority goes on to say that if entry is refused the officers should obtain a warrant and effect entry by such legitimate means.[10] The same situation is apparent here. The regulation does not require an unconstitutional method of search. It may be carried out within the framework of the Constitution by obtaining a warrant. Hence we do not wish to be understood as saying that the regulation is unreasonable on its face. We express an opinion only as to its application under the present facts.

■ We believe that the conditions of this case did not warrant the action taken by the health officer. Neither summary abatement nor entry over objection can be justified under the circumstances. Therefore it must follow that the conviction can not be sustained.

Reversed.

[2] 3 McQuillin, Municipal Corporations (2nd ed.) § 954.

[3] Gardner v. People of State of Michigan, 199 U.S. 325, 26 S.Ct. 106, 50 L.Ed. 212. See Dupont v. District of Columbia, 20 App.D.C. 477.

[4] Consumers' Co. v. City of Chicago, 313 Ill. 408, 145 N.E. 114.

[5] 25 Am.Jur., Health, § 28.

[6] Hubbell v. Higgins, 148 Iowa 36, 126 N.W. 914, Am.Cas.1912B, 822; Keiper v. City of Louisville, 152 Ky. 691, 154 S. W. 18.

[7] Freund, Police Power § 47. See McDonald v. United States, 69 S.Ct. 191.

[8] See North American Cold Storage Co. v. City of Chicago, 211 U.S. 306, 29 S.Ct. 101, 53 L.Ed. 195, 15 Ann.Cas. 276; Lawton v. Steele, 152 U.S. 133, 14 S.Ct. 499, 38 L.Ed. 385.

[9] Hannibal & St. Joseph R. Co. v. Husen, 95 U.S. 465, 24 L.Ed. 527.

[10] Public Health and Safety, Parker & Worthington (1892) §§ 43, 144, 145.