# DISTRICT OF COLUMBIA *v.* LITTLE.

No. 302. Argued January 11–12, 1950.—Decided February 20, 1950.

2

 

 

*Chester H. Gray* argued the cause for petitioner. With him on the brief were *Vernon E. West, Lee F. Dante* and *Edward A. Beard.*

By special leave of Court, *Anne X. Alpern* argued the cause for the National Institute of Municipal Law Officers, as *amicus curiae,* urging reversal. With her on the brief were *John P. McGrath, Ray L. Chesebro, Benjamin S. Adamowski, Alexander G. Brown* and *Charles S. Rhyne.*

*Jeff Busby* argued the cause and filed a brief for respondent.

MR. JUSTICE BLACK delivered the opinion of the Court.

An information was filed against the respondent Geraldine Little in the Municipal Court for the District of Columbia charging that she had interfered with a District Health Department inspector in the performance of his official duties. The evidence showed that respondent had told the health officer, who had no search warrant, not to enter her home to inspect its sanitary condition; she had also refused to unlock her door. She was convicted and fined $25. The Municipal Court of Appeals reversed, holding that the Fourth Amendment's prohibition against unreasonable searches and seizures forbade the health officer to enter respondent's private home without a search warrant. 62 A. 2d 874. The United States Court of Appeals for the District of Columbia Circuit affirmed on the same grounds. 85 U. S. App. D. C. 242, 178 F. 2d 13. The case raises important questions concerning legal provisions for protecting the health of the people by special and periodic inspection

and elimination of potential sources of disease. We granted certiorari, 338 U. S. 866.

In this Court the constitutional arguments have extended far beyond the comparatively narrow issues involved in the particular case. At one extreme the District argues that the Fourth Amendment has no application whatever to inspections and investigations made by health officers; that to preserve the public health, officers may without judicial warrants enter premises, public buildings and private residences at any reasonable hour, with or without the owner's consent. At the opposite extreme, it is argued that no sanitary inspection can ever be made by health officers without a search warrant, except with a property owner's consent. Between these two extremes are suggestions that the Fourth Amendment requires search warrants to inspect premises where the object of inspections is to obtain evidence for criminal punishment or where there are conditions imminently dangerous to life and health, but that municipalities and other governing agencies may lawfully provide for general routine inspections at reasonable hours without search warrants. An impressive array of facts is also presented concerning the uniform practices of agencies of local governments to provide for such general routine inspections in connection with sanitation, plumbing, buildings, etc.

Neither the facts of this case, nor the District law on which the prosecution rests, provide a basis for a sweeping determination of the Fourth Amendment's application to all these varied types of investigations, inspections and searches. Yet a decision of the constitutional requirement for a search in this particular case might have far-reaching and unexpected implications as to closely related questions not now before us. This is therefore an appropriate case in which to apply our sound general policy against deciding constitutional questions if the record

permits final disposition of a cause on non-constitutional grounds. See *Rescue Army* v. *Municipal Court*, 331 U. S. 549, 568–575, and cases there cited. Applying this policy, we find it unnecessary to decide whether the Fourth Amendment required a search warrant here. For even if the Health Officer had a lawful right to inspect the premises without a warrant, we are persuaded that respondent's statements to the officer were not an "interference" that made her guilty of a misdemeanor under the controlling District law.[1]

The District regulation which respondent was convicted of violating is set out in part below.[2] It requires

---

[1] The lower courts, apparently preoccupied with the constitutional issue, did not refer to this question. Ordinarily we would hesitate to decide questions of District law on which the courts of the District have not spoken. See, *e. g., Griffin* v. *United States,* 336 U. S. 704, 718, and cases there cited. Here, however, the interpretative question is so enmeshed with constitutional issues that complete disposition by this Court is in order.

[2] "2. That it shall be the duty of every person occupying any premises, or any part of any premises, in the District of Columbia, or if such premises be not occupied, of the owner thereof, to keep such premises or part . . . clean and wholesome; if, upon inspection by the Health Officer or an Inspector of the Health Department it be ascertained that any such premises, or any part thereof, or any building, yard, . . . is not in such condition as herein required, the occupant or occupants of such premises or part, or the owner thereof, as hereinbefore specified, shall be notified thereof and required to place the same in a clean and wholesome condition; and in case any person shall fail or neglect to place such premises or part in such condition within the time allowed by said notice he shall be liable to the penalties hereinafter provided.

. . . . .

"10. That the Health Officer shall examine or cause to be examined any building supposed or reported to be in an unsanitary condition, and make a record of such examination; . . . .

. . . . .

"12. That any person violating, or aiding or abetting in violating, any of the provisions of these regulations, or interfering with or

that occupants of premises in the District shall keep them "clean and wholesome"; that Health Officers shall "examine or cause to be examined any building supposed or reported to be in an unsanitary condition"; and that "any person violating . . . any of the provisions of these regulations, or interfering with or preventing any inspection authorized thereby, shall be deemed guilty of a misdemeanor . . . ." An occupant of respondent's house reported to the Health Officer that conditions inside her home were very far from "clean and wholesome."[3] The Health Officer then went to respondent's home. She was away and the door was locked. The officer had no search warrant. While he was standing outside the door, respondent returned. She protested the right of the inspector to enter her private home, claiming that his entry would violate her constitutional rights. She neither used nor threatened force of any kind.[4] In view of these facts found by the courts below, the question boils down to whether respondent's mere refusal to unlock

---

preventing any inspection authorized thereby, shall be deemed guilty of a misdemeanor, and shall, upon conviction in the Police Court, be punished by a fine of not less than $5 nor more than $45." Commissioners' Regulations Concerning the Use and Occupancy of Buildings and Grounds, promulgated April 22, 1897, amended July 28, 1922.

[3] The complaint was that "there was an accumulation of loose and uncovered garbage and trash in the halls of said premises and that certain of the persons residing therein had failed to avail themselves of the toilet facilities."

[4] There was evidence that some distance away from the home respondent attempted to grab some papers from the officer. The Municipal Court of Appeals and the Court of Appeals for the District both held that the information on which respondent was convicted was not based on this incident. Those courts and the Municipal Court in which respondent was convicted all treated the conviction as having been based on respondent's refusal to unlock the door on the ground that the officer was without constitutional right to enter.

the door accompanied by remonstrances on substantial constitutional grounds was the kind of interference prohibited by the regulation.[5] We hold that it was not.

Although force or threatened force is not always an indispensable ingredient of the offense of interfering with an officer in the discharge of his duties, mere remonstrances or even criticisms of an officer are not usually held to be the equivalent of unlawful interference.[6] Nor does any express language in the District regulation controlling here impose any duty on home owners to assist health officers to enter and inspect their homes. It does not even prohibit "hindering" or "refusing to permit any lawful inspection," in sharp contrast with a separate inspection statute enacted by Congress for the District which adds these phrases to prohibitions against "interference" and "prevention."[7] The word "interfere" in

---

[5] The information charged that respondent "did . . . hinder, obstruct, and interfere with an inspector of the Health Department . . . ." The regulation on which the prosecution was based does not include the words "hinder" and "obstruct." These words do appear in an Act of Congress which provides for an abatement of nuisances in the District and specifically authorizes persons delegated by the District Commissioners to enter premises "during all reasonable hours, to inspect the same and to do whatever may be necessary to correct" a condition amounting to a nuisance. 34 Stat. 115. But that Act is not involved in this case.

[6] See cases collected in Notes, 48 A. L. R. 746, 749, 755; Ann. Cas. 1914B, 814.

[7] "SEC. 11. That no person shall interfere with any member of the board for the condemnation of insanitary buildings or with any person acting under authority and by direction of said board in the discharge of his lawful duties, nor hinder, prevent, or refuse to permit any lawful inspection or the performance of any work authorized by this Act to be done by or by authority and direction of said board." 34 Stat. 157, 159.

There is another interesting difference between the above statute and the regulation here involved. The statute expressly limits inspection to the hours between 8 a. m. and 5 p. m.; the regulation has

this regulation cannot fairly be interpreted to encompass respondent's failure to unlock her door and her remonstrances on constitutional grounds.

Had the respondent not objected to the officer's entry of her house without a search warrant, she might thereby have waived her constitutional objections.[8] The right to privacy in the home holds too high a place in our system of laws to justify a statutory interpretation that would impose a criminal punishment on one who does nothing more than respondent did here. The judgment of the Court of Appeals affirming the Municipal Court of Appeals judgment setting aside the conviction is

*Affirmed.*

MR. JUSTICE DOUGLAS took no part in the consideration or decision of this case.

MR. JUSTICE BURTON, with whom MR. JUSTICE REED concurs, dissenting.

If this Court is to interpret an ordinance of the District of Columbia, it seems to me that the action of the respondent was an effective interference with an inspector of the District Health Department in the performance of his official duties, and that such conduct of the respondent violated the ordinance that is before us. In my opinion, also, the duties which the inspector was seeking to perform, under the authority of the District, were of such a reasonable, general, routine, accepted and important character, in the protection of the public health and safety, that they were being performed lawfully without such a search warrant as is required by the Fourth

---

no limitation of this or indeed of any other type, though petitioner admits that a requirement of "reasonableness" should be read into it. See also 49 Stat. 1917, 1919, § 10.

 [8] See collections cited in note 6 *supra.*

8

Amendment to protect the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures.

Accordingly, the conviction of the respondent should be sustained, and the judgment of the United States Court of Appeals affirming the judgment of the Municipal Court of Appeals setting aside that conviction should be reversed.