RAFAEL BUSCAGLIA, TESORERO DE PUERTO RICO, peticionario, *v.* TRIBUNAL DE CONTRIBUCIONES DE PUERTO RICO, demandado; WALLACE CLEGG KEMPER, interventor.

Núm. 220:—*Sometido:* Abril 18, 1950. *Resuelto:* Abril 27, 1950.

*Hon. Procurador General Vicente Géigel Polanco (José C. Aponte, Procurador General Interino, en la petición, y José Trías Monge, Procurador General Interino, en el alegato) y Elmer Toro Lucchetti, Procurador General Auxiliar,* abogados del peticionario; *James R. Beverley y R. Castro Fernández,* abogados del interventor, querellante en el pleito principal.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

Wallace Clegg Kemper rindió su planilla de contribuciones sobre ingresos para el año 1944. Reclamó una exención personal de $2,000 y un crédito de $1,200 por sus tres hijos como dependientes. Al lado de estas partidas escribió la siguiente nota: "⅓ de año". También acompañó a su planilla un volante que decía así: "Aunque soy un visitante temporero en esta Isla, y por lo tanto un no residente y no ciudadano, estoy declarando y pagando la Contribución sobre Ingresos. Sin embargo, por consejos de mi abogado, efectúo el pago a razón

de los tipos señalados para ciudadanos o residentes de Puerto Rico."

El Tesorero notificó a Kemper una deficiencia de $569.37 por los fundamentos de que (1) como no residente debía pagar su contribución sobre ingresos para 1944 al tipo de 28 por ciento (que en su caso era mayor que la contribución normal y adicional en caso de ser un residente) ; y que (2) como no residente no tenía derecho a la exención personal y créditos por dependientes provistos por la Ley para los residentes.

En octubre 29, 1945 Kemper solicitó la reconsideración, alegando que "aunque no es ciudadano residente de esta Isla de Puerto Rico, sin embargo es ciudadano americano con residencia en Franklin, Estado de Louisiana." También alegaba que "ha estado y está residiendo temporalmente en Ensenada, Puerto Rico." Su moción terminaba alegando que de acuerdo con lo resuelto en el caso de *Fiddler* v. *Tribunal de Contribuciones*, 65 D.P.R. 202, "la imposición del tipo contributivo del 28 por ciento dispuesto por la ley para los individuos no residentes que no sean ciudadanos de Puerto Rico, es nula e inconstitucional en tanto en cuanto establece un discrimen entre los ciudadanos americanos no residentes de Puerto Rico y los ciudadanos residentes de Puerto Rico."

El Tesorero declaró sin lugar la reconsideración y en enero 26, 1948 Kemper radicó una querella ante el Tribunal de Contribuciones. Alegaba en ella que era ciudadano de y domiciliado en Louisiana, residiendo en Ensenada, Puerto Rico. Atacó la deficiencia por los siguientes fundamentos:

"(c) Porque las disposiciones de las secciones 12(a) y 18 (b, c, d y e) de la Ley de Contribuciones Sobre Ingresos en vigor en 1944 son inconstitucionales y nulas en tanto en cuanto imponen a los ciudadanos americanos no domiciliados en Puerto Rico un tipo de contribución mayor y les niega la deducción concedida a los ciudadanos residentes. *Fiddler* v. *Tribunal de Contribuciones*, 65 D.P.R. 202.

"(d) Porque el Tesorero de Puerto Rico consideró al apelante como un no residente de esta Isla cuando de hecho el

contribuyente durante todo el año contributivo 1944 residió en Ensenada, Puerto Rico."

Se celebró el juicio en los méritos después de haber sido revocado el caso de *Fiddler*. *Buscaglia, Tes*, v. *Tribl. de Contribuciones; Pérez Vahamonde, Interventora*, 68 D.P.R. 345. El querellante no estaba presente y no declaró. El único testigo que declaró a su favor fué James R. Beverley, cuyo testimonio es como sigue:

"Que en 1944, así como en 1948, era Consejero General y Vice-Presidente de la South Porto Rico Sugar Company, y que conoce personalmente a Wallace Clegg Kemper.

"Que en el año 1943 Kemper vivía en Franklin, estado de Louisiana; que mientras trabajaba allá, en una central azucarera, celebró un contrato con la dirección de la South Porto Rico Sugar Company, por los términos del cual quedó comprometido a prestar servicios a esta última compañía, aquí en Puerto Rico, en el carácter de empleado, en general; que no vino aquí a desempeñar ningún cargo específico.

"Que Kemper salió de Louisiana para esta Isla en agosto o septiembre del año 1943, y permaneció en el poblado de Ensenada, Puerto Rico, *aunque no continuadamente,* hasta fines del año 1945, cuando, en virtud de una transferencia o nuevo nombramiento, se trasladó a Nueva York.

"Que los cargos de Kemper en la South Porto Rico Sugar Company fueron: primero, de ayudante del gerente; y, poco después, ayudante del presidente de la corporación. Que su trabajo en esta isla fué para él, un descanso.

"Que Kemper estaba casado y tenía tres hijos, dos de los cuales asistieron, durante 1944, a la escuela en el referido poblado de Ensenada; y el tercero, que era su hija mayor cursaba estudios en una escuela en los Estados Unidos." (Bastardillas nuestras.) (¹)

El Tesorero presentó en evidencia la planilla radicada por Kemper y la moción de reconsideración a que antes nos hemos referido. El Tribunal de Contribuciones dictó resolución a

---

(¹) Debido a que el taquígrafo que tomó las notas en la vista celebrada no está disponible para hacer la transcripción, la declaración del señor Beverley fué aprobada por el Tribunal de Contribuciones en forma narrativa de acuerdo con el inciso 10 (*f*) de nuestro Reglamento.

favor del contribuyente. A petición del Tesorero expedimos el auto para revisar esta decisión. El primer señalamiento es que el Tribunal de Contribuciones cometió error al rehusar resolver la cuestión de hecho en cuanto a la residencia del contribuyente.

■■ Después de resumir la declaración del señor Beverley y las manifestaciones contenidas en la planilla y en la moción de reconsideración a que ya nos hemos referido, el Tribunal de Contribuciones no hizo conclusiones de hecho. Por el contrario, procedió a resolver que las cláusulas sobre contribución uniforme y sobre la igual protección de las leyes contenidas en el Acta Orgánica, 48 U.S.C. sección 737, impiden a la Legislatura imponer contribuciones a personas *que están físicamente en Puerto Rico* de manera distinta de los residentes, basada exclusivamente en que no son residentes aquí. La opinión del Tribunal de Contribuciones concluye con los siguientes dos párrafos:

"No es necesario, en el caso de autos, determinar si el querellante era, técnicamente, un *no* residente, de acuerdo con la definición que de un 'nonresident individual not a citizen of Puerto Rico' aparece en el artículo 183 del *Income Tax Regulations No. 1*. Aunque, de acuerdo con la evidencia aducida, resolveríamos que Wallace Clegg Kemper era, en 1944, un individuo no residente y no ciudadano de Puerto Rico, todavía él tendría derecho a las garantías de nuestra Carta Orgánica establecidas para toda persona que se hallare físicamente dentro de la jurisdicción del país.

"Debido, pues, al hecho de que, durante el año 1944, el querellante se hallaba físicamente en Puerto Rico, él tiene derecho a los mismos tipos contributivos y a las mismas deducciones de sus ingresos que se disponen por ley para la determinación de las contribuciones de ingresos pagaderas por los ciudadanos de Puerto Rico aquí residentes."

La cuestión constitucional levantada por el Tribunal de Contribuciones es importante y sustancial. *Cf. Buscaglia, Tes.* v. *Tribl. de Contribuciones, Pérez Vahamonde, Interven-*

*tora*, supra, particularmente la nota 7 a la pág. 360; *South Porto Rico Sugar Co.* v. *Buscaglia*, 154 F.2d 96 (C.C.A. 1, 1946); *Tes.* v. *Tribunal de Contribuciones y Solé*, 69 D.P:R. 905; *Ballester* v. *Tribunal de Apelación*, 61 D.P.R. 474, 485 *et seq.* Sin embargo, todas las cortes sabiamente evitan cuestiones constitucionales siempre que sea posible. *District of Columbia* v. *Little*, 339 U.S. 1; *Buscaglia* v. *Fiddler*, 157 F.2d 579 (C.C.A. 1, 1946). Desde luego esta regla obliga al Tribunal de Contribuciones. Pero en este caso la infringió. Rehusó entrar en los hechos en cuanto a la residencia del contribuyente. Por el contrario, pasó sobre una cuestión legal hipotética la cual pudo o no ser necesario resolver, dependiendo de qué hechos encontraba probados. En este caso, antes de que el Tribunal de Contribuciones llegara a considerar cualquier cuestión de derecho, especialmente cuestiones constitucionales, era su deber determinar como cuestión de hecho si Kemper era o no residente de Puerto Rico dentro del alcance de la Ley de Contribución sobre Ingresos. Véase *Buscaglia* v. *Fiddler*, supra. El Tribunal de Contribuciones, en vez de cumplir con ese deber, prefirió resolver una cuestión constitucional, la cual, como hemos visto, pudo haber sido innecesaria. Hasta que las cuestiones de hecho en cada caso sean resueltas por el Tribunal de Contribuciones, es inútil, arriesgado y completamente innecesario, tanto para ese Tribunal como para nosotros, especular en un vacío, como hizo dicho Tribunal, en cuanto a los alegados derechos constitucionales de toda clase de individuos que puedan obtener ingresos mientras estén "físicamente" en Puerto Rico. (²)

■ En una serie de casos, culminando con el de *Santana Hernández et al.* v. *García et al.*, ante, pág. 142, hemos recalcado la necesidad de exponer las conclusiones de hecho y de derecho a tenor con la Regla 52 (a) de las Reglas de Enjuicia-

---

(²) *Cf.* la situación de los jugadores de pelota, miembros de compañías teatrales, artistas visitantes en programas de radio, turistas que ganan dinero jugando aquí, etc.

miento Civil, en los casos resueltos por las cortes de distrito. Dijimos en la nota 1 en el caso de *Santana Hernández* que en el futuro dejaremos sin efecto sentencias en aquellos casos en los cuales no se haya cumplido con este requisito. (³)  Esta sabia regla se aplica aún con más fuerza en este caso, por dos razones.  En primer lugar, al revisar decisiones del Tribunal de Contribuciones pasamos solamente sobre cuestiones de derecho.  *Tes.* v. *Tribl. Contribuciones y Santiago*, 69 D.P.R. 849, y casos citados.  Esto hace imperativas las conclusiones de hecho por el Tribunal de Contribuciones.  En segundo lugar, las cuestiones constitucionales que se vislumbren en lontananza posiblemente se desvanecerían como resultado de las conclusiones de hecho del Tribunal de Contribuciones. (⁴)

*La resolución del Tribunal de Contribuciones será revocada y el caso devuelto para ulteriores procedimientos no inconsistentes con esta opinión.*

El Juez Asociado Sr. Negrón Fernández se inhibió.

---

(³) Como señalamos en el caso de *Meléndez* v. *Metro Taxicabs*, 68 D.P.R. 766, 770: "La Regla 52 (*a*) contempla una declaración separada en un párrafo aparte de cada hecho intermedio y definitivo (*underlying and ultimate*) que la corte declare probado, y no una síntesis de la prueba aducida para establecer estos hechos.  A esta declaración de hechos probados debe seguir una declaración separada en párrafo aparte de cada conclusión de derecho.  Finalmente, si bien la Regla 52 (*a*) no lo exige, si la corte de distrito así lo desea, puede exponer en una opinión su razonamiento demostrativo de que la aplicación de sus conclusiones de derecho a los hechos probados hace imperativo dictar determinada sentencia.  Todo esto es práctica corriente en las cortes federales bajo la Regla Federal 52 (*a*) que, en cuanto a lo que ahora consideramos, es sustancialmente igual a la nuestra."

(⁴) Por ejemplo, durante la vista de este caso, el abogado del Tesorero nos manifestó que cuando devolvimos el caso de *Fiddler*, el Tribunal de Contribuciones halló probado que el señor Fiddler era un residente dentro del alcance de la Ley y que el Tesorero no había solicitado la revisión de esta decisión.  Véase *Fiddler* v. *Tribl. Contribuciones*, 68 D.P.R. 847.