Burke, J.
(dissenting). The judgment of the County Court should be affirmed.
That a community is, of course, properly concerned lest conditions in buildings imperil the health and safety of the public is a proposition which was upheld in the cases of Frank v. Maryland (359 U. S. 360 [1959]) and Eaton v. Price (364 U. S. 263). It is not enough, as the rationale in Frank v. Maryland (supra) finds, to voice agreement with the desirability, if not necessity, of laws regulating the maintenance of illegal premises. Nor is this purpose effectuated by enactment of legislation. Provision must be made for enforcement of the laws by inspection, prosecution and imposition of penalties. The most effective tool of enforcement is by periodic inspection of the premises affected by the regulatory statutes to the end that the illegal conditions may be uncovered. The necessity for such inspections has been recognized from the very beginning of legislation in this field. (See MacNeil Mitchell, Historical Development of the Multiple *311 Dwelling Law, printed as a foreword to McKinney’s Multiple Dwelling Law [McKinney’s Cons. Laws of N. Y., Book 35-A, pp. IX-XXI].) In 1647 in New Amsterdam, surveyors were appointed to superintend construction of houses and fences, and given the power to inspect private premises. In 1648 inspectors were appointed to inspect chimneys in private dwellings. The Legislature as early as 1796 passed a law which gave the city officials the right to enter homes to take steps to correct unsanitary conditions. (See, also, Rev. Stat. of N. Y. [1828], part I, eh. XIV, entitled “ Of the Public Health ” [tit. Ill, art. I; vol. I, p. 440].) The reported cases dealing with the right of municipal authorities to inspect premises for possible violations of regulatory statutes have invariably affirmed such rights. (Safee v. City of Buffalo, 204 App. Div. 561; Givner v. State, 210 Md. 484; Richards v. City of Columbia, 227 S. C. 538; Thurlow v. Crossman, 336 Mass. 248; cf. State v. Buxton, 238 Ind. 93, 101, and cases cited in n. 5 thereat; City of St. Louis v. Evans, 337 S. W. 2d 948 [Mo.].) The penalties imposed for violations necessarily must be effective and therefore embrace both fines and imprisonment.
The case of Thurlow v. Crossman (supra) is of particular interest. The plaintiff there brought an action in trespass against a “supervisor coastal warden ” who had driven a State-owned automobile upon the plaintiff’s premises to investigate suspected illegal activities relating to the taking and delivery of shellfish. The defendant who was in uniform was on the plaintiff’s property for about 15 minutes. The court there said (p. 250): “ The defendant in his capacity as enforcement officer was authorized in the performance of his duties, to ‘ enter upon and pass through or over private property or lands whether or not covered by water.’ * * * Parker v. Barnard, 135 Mass. 116, 117 ‘ [R]ights of property are held subject to such reasonable control and regulation of the mode of keeping and use as the legislature under the police power vested in them by the Constitution of the Commonwealth may think necessary for the . . . security of the public health and welfare ’ ”.
Indeed, in People v. Fidler (280 App. Div. 698), in construing section 1851 of the Penal Law, which declares a person who willfully resists, delays, or obstructs a public officer in discharging the duty of his office to be guilty of a misdemeanor, *312 the court, per Bergan, J., stated: “We must discriminate carefully to see the difference between a right to search the person or vehicle after a valid arrest for a crime based on probable cause resting on one theory of law justifying intrusion into privacy; and a right to inspect the safety of a vehicle resting on quite a different theory of law justifying the examination of private property on the use to which the property is put in its effect on the public safety.” (Italics supplied.)
On the subject Mr. Justice Frankfurter in Frank v. Maryland (supra, pp. 371-372) stated that “ the problems which gave rise to these ordinances have multiplied manifold, as have the difficulties of enforcement. The need to maintain basic, minimal standards of housing, to prevent the spread of disease and of that pervasive breakdown in the fiber of a people which is produced by slums and the absence of the barest essentials of civilized living, has mounted to a major concern of American government. The growth of cities, the crowding of populations, the increased awareness of the responsibility of the state for the living conditions of its citizens, all have combined to create problems of the enforcement of minimum standards of far greater magnitude than the writers of these ancient inspection laws ever dreamed ’ ’. Hence the authoritative case law distingushes between a peace officer and a building inspector where the right to search without a warrant has been conferred by statute or ordinance on the inspector.
In this case section 10.1 of the Building Zone Ordinance of the Village of Laurel Hollow provides: “It shall be the duty of the Building Inspector, and he hereby is given authority, to enf orce the provisions of this ordinance. The Building Inspector in the discharge of his duties shall have authority to enter any building or premises at any reasonable hour.”
As Mr. ’ Justice Frankfurter said in Frank v. Maryland (supra, p. 372), “ Time and-experience have forcefully taught that the power to inspect dwelling places, either as a matter of systematic area-by-area search or, as here, to treat a specific problem, is of indispensable importance to the maintenance of community health; a power that would be greatly hobbled by the blanket requirement of the safeguards necessary for a search of evidence of criminal acts. The need for preventive action is great, and city after city has seen this need and granted the *313 power of inspection to its health officials * * *. Certainly, the nature of our society has not vitiated the need for inspections first thought necessary 158 years ago, nor has experience revealed any abuse or inroad on freedom in meeting this need by means that history and dominant public opinion have sanctioned.”
It is important to note there is no provision in our law which would authorize the issuance of a search warrant to a building inspector or health inspector. Section 791 of the Code of Criminal Procedure provides that ‘‘ A search warrant is an order in writing in the name of the people signed by a judge, justice or magistrate of a court of criminal jurisdiction, directed to a peace officer, commanding him to search for personal property, and to bring it before the judge, justice or magistrate ’ ’. (Italics supplied.)
Even though the sanctions for violations of zoning statutes and other regulatory laws resemble criminal sanctions, a violation of such laws does not constitute a crime. Such violations are analogous to offenses. They may not in any way or in any sense be referred to as part of a criminal record.
In District of Columbia v. Little (178 F. 2d 13 [C. A. D. C., 1949], affd. on other grounds 339 U. S. 1 [1950]) the rationale of the opinions did not foreclose a right of inspection of private dwellings. It seems to me that the “ duties which the inspector was seeking to perform, under the authority of the [village], were of such a reasonable, general, routine, accepted and important character, in the protection of the public health and safety, that they were being performed lawfully without such search warrant as is required by the Fourth Amendment to protect the right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures ”. (District of Columbia v. Little, 339 U. S. 1, 7-8, supra.)
The distinction made by the court between inspections resulting in administrative or civil action and those resulting in imprisonment is a most unhappy one. Who knows what penalties may be advisable in order to correct violations uncovered by periodic inspections of health and building officials ? At the time of the inspection no one can know. In an analogous situation the United States Supreme Court has pointed out that searches *314 are good or bad when they are made, on the basis of facts then existing. Their legality is not affected by subsequent occurrences. (Byars v. United States, 273 U. ,S. 28; United States v. Di Re, 332 U. S. 581.) Yet the court today suggests that an inspector’s right to search for violations may depend on the consequences visited on those responsible for the violations sought to be uncovered by the inspection. I would have thought it obvious that we cannot lay down a rule regulating official conduct by reference to events not yet existing, or frequently even foreseeable, at the time of the search.
With the restriction imposed for the first time today, the enforcement of zoning laws and other regulatory statutes governing the use of property will be thwarted with a resultant increase in conditions which will breed not only slums in cities but will, as well, endanger the health, safety and welfare of all communities in this State.
Judges Fuld and Van Voorhis concur with Judge Bergan ; Chief Judge Desmond concurs in a separate memorandum; Judge Burke dissents in an opinion in which Judges Dye and Scileppi concur.
Judgment reversed, etc.